**In re ARTHUR TREACHER'S FRANCHISE LITIGATION.**

Civ. A. No. 81–1085.
MDL No. 467.

United States District Court,
E. D. Pennsylvania.

March 9, 1982.

See also 92 F.R.D. 398.

John M. Elliott, Edward F. Mannino (argued), Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., liaison counsel for Arthur Treacher's Fish & Chips, Inc., and Mrs. Paul's.

Franklin Poul, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., liaison counsel for Franchisees.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

## I. INTRODUCTION

Plaintiff, Arthur Treacher's Fish & Chips, Inc. (ATFC), has moved the Court to certify a defendant class in Civil Action No. 81–1085. The class action would be limited to Count II of the complaint in which plaintiff seeks the following relief:

... an Order (1) enjoining the class of franchises from continuing to withhold from payment to Arthur Treacher's the contractually mandated royalty payments due and owing to Arthur Treacher's; (2) directing the class of franchises to pay to Arthur Treacher's the contractually mandated royalty payments due and owing to Arthur Treacher's; (3) awarding Arthur Treacher's damages caused by the franchisee class' breach of its contracts with Arthur Treacher's; (4) granting plaintiff attorneys' fees and costs of suit; (5) retaining jurisdiction over this action to insure compliance with the Order of this Court; and (6) granting such further relief as the Court deems necessary and proper.

The purported class is defined by plaintiff in paragraph 88 of the complaint as follows:

All franchisees of Arthur Treacher's who have executed written contracts with Arthur Treacher's and have refused and/or failed to make royalty payments owed to Arthur Treacher's pursuant to the terms of the written contracts between them and Arthur Treacher's.

In a prior opinion which discussed this motion, the Court found that plaintiff satisfied the "numerosity" and "commonality" requirements set forth respectively in Fed. R.Civ.P. 23(a)(1) & (2). What was not decided was whether plaintiff could demonstrate the presence of "typicality" and "adequacy of representation" as required by Fed.R.Civ.P. 23(a)(3) & (4). The question as to which subsection, if any, of Rule 23(b) the purported class fit into was similarly left open. See Memorandum And Order, (1981) 92 F.R.D. 398. The Court stated:

[T]here is a valid question as to the propriety of class treatment in this case. The record as it now stands does not provide an answer to these questions. The Court simply has not been provided with enough information with which to reach an informed judgment as to whether a class should be certified. In a sense, therefore, plaintiff has failed to sustain its burden. Nevertheless, an evaluation of whether the burden imposed by Rule 23 upon the class action proponent has been met in a given case naturally ought to be made after all available information is before the Court. The Court will not deny the present motion on the grounds that plaintiff failed to satisfy its burden of demonstrating the appropriateness of class action treatment if, in fact, there is evidence not presently before the Court with which the plaintiff could carry its burden. In other words, the Court is unwilling to render a decision, one way or the other, based upon what it perceives to be a lack of information. Therefore, the Court will order an evidentiary hearing and supplemental briefing before deciding this important issue.

Id. at 426. The evidentiary hearing, along with oral argument, was conducted on January 14, 1982. See Transcript, Docket Entry No. 463, at 97–163; 173–205 (hereinafter cited as "Tr."). Some of the questions which prompted the holding of the evidentiary hearing were set forth in the October 15th opinion:

First, what evidence supports the assertion that the claims or defenses of the representative parties are typical? In this regard defendants claim that variations in the contracts themselves and varying reasons for withholding royalties will necessarily [sic] lead to different claims or defenses, thus militating against a finding of typicality. Second, does the potential conflicts of law issue pointed out by defendants militate against class action treatment? Third, are there not viable conflicts among the class members which would result in some interests not being adequately represented? If so, would subclassing re-

solve these conflicts? *See* Rule 23(c)(4)(B). If a class was certified and divided into appropriate subclasses, *i.e.*, those defendants still operating restaurants as opposed to those who do not; those defendants who paid advertising co-op fees as opposed to those who did not, etc.; do the named members of the putative class represent all of the potentially diverse interests or would additional representatives need to be named? These questions are not meant to be exclusive but merely indicative of the areas in which the court lacks evidence from which an informed judgment could be rendered. Thus, plaintiff will want to focus its attention upon the "typicality" and "adequate representation" prerequisites, *as well as buttressing its contention with regard to which, if any, subsection of Rule 23(b) the class fits into.* Pending a supplementation of the record with regard to questions similar to those mentioned above, a decision on whether to maintain Count II of No. 81–1085 as a class action will be deferred.

*Memorandum And Order, supra* at 426–27 (emphasis added).

After careful consideration of this important question the Court concludes that this motion must be denied. Although plaintiff has presented a viable case for the finding of typicality and adequacy of representation, *see* Part III, *infra*, this purported class does not fit into any of the categories set forth in Rule 23(b), and the present motion will be denied on that basis.

## II. *Rule 23(b)*

In addition to satisfying the prerequisites of subdivision (a), it must be established that the action is maintainable within one of the categories described in subdivision (b). Plaintiff has moved for certification of this defendant class under all of the categories set forth in Rule 23(b)(1), (2) & (3).

### A. *Rule 23(b)(1)(A)*

Rule 23(b)(1)(A) focuses upon the effect the prosecution of individual actions would have upon the party opposing the class, which is the plaintiff in this case. Thus, if "the prosecution of separate actions by [the plaintiff] against individual members of the [defendant] class would create a risk of . . . inconsistent or varying adjudications with respect to individual [defendants] which would establish incompatible standards of conduct for the [plaintiff]," then the action may be maintained as a class action under Rule 23(b)(1)(A). Absent class certification, plaintiff would be in a position of prosecuting separate actions against the defendant-franchisees in order to recover the disputed royalties. That situation would create a risk that the resultant judgments would impose an obligation on some, but perhaps not all, of the defendants to pay the disputed royalties to ATFC. As plaintiff describes it, "unless a defendant class action is certified, there is a distinct possibility that Arthur Treacher's will be prevented from enforcing its contract against some recalcitrant franchisees in one court while permitted recovery in another." *Plaintiff's Brief In Support Of Its Motion For Certification Of A Defendant Class Action,* Docket Entry No. 49 at 12–13 (hereinafter cited as *"Plaintiff's Brief"*). While agreeing generally with plaintiff's assessment of the potential situation absent certification, the Court cannot agree that the potential situation as described warrants certification under Rule 23(b)(1)(A). The fact that ATFC would possibly recover against some defendants but not others in separate actions would not result in the imposition of "incompatible standards of conduct" for ATFC.

In *McDonnell Douglas Corp. v. United States District Court For the Central District of California,* 523 F.2d 1083 (9th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), the court granted petitions for mandamus to review the district court's certification of a plaintiff class consisting of all next of kin of passengers who died in an airplane crash. In issuing the writ of mandamus directing the district court to vacate the certification, the Ninth Circuit stated the following with regard to (b)(1)(A):

The district court found [that (b)(1)(A) was satisfied] in this case because if separate actions were maintained, defendants

might be held liable in some actions but not in others. This conclusion is untenable. Admittedly, separate actions could reach inconsistent results and inconsistent resolutions of the same question of law might establish "incompatible standards of conduct" in the sense of different legal rules governing the same conduct. But subdivision (b)(1)(A) was not intended to permit class actions simply when separate actions would raise the same question of law. 523 F.2d at 1086. *See also Richardson v. Hamilton International Corporation,* 62 F.R.D. 413, 420 (E.D.Pa.1974) (certification under (b)(1)(A) must be denied where no risk of varying adjudications resulting in incompatible standards of conduct). Thus, relying upon *McDonnell Douglas, supra,* defendants argue:

> In the present action, ATFC seeks primarily to recover allegedly due franchise fees. If ATFC prevails against one franchisee, but not another, that will only mean that it is entitled to franchise fees from the first franchisee, but not the second. ATFC would not be required to take incompatible positions in its dealings with franchisees. The addition by ATFC of a claim for declaratory relief to its damage claims is legally insufficient.

*Memorandum In Opposition To Motion Of Arthur Treacher's Fish & Chips, Inc. For Certification Of A Defendant Class,* Docket Entry No. 59 at 32. (hereinafter cited as *"Memorandum In Opposition"*). This analysis by defendants is persuasive and is consistent with this Court's reading of the applicable case law. Defendant class action treatment pursuant to Rule 23(b)(1)(A) is inappropriate in this case.

### B. *Rule 23(b)(1)(B)*

The rule states that class action treatment is maintainable if "the prosecution of separate actions ... against individual members of the class would create a risk of ... adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Unlike (b)(1)(A), subdivision (b)(1)(B) focuses upon the class rather than the party opposing the class. Plaintiff argues that due to the presence of common questions in this litigation, "an adjudication of Arthur Treacher's claims against one franchisee would necessarily be afforded great weight by a court in subsequent actions against other nonparty franchisees." *Plaintiff's Reply Brief In Further Support Of Motion For Certification Of A Defendant Class,* Docket Entry No. 329 at 16 (hereinafter cited as *"Plaintiff's Reply Brief."*). *See also Plaintiff's Brief, supra* at 13–14. In effect, plaintiff is contending that the *stare decisis* or comity effects that one decision would have in this litigation justifies certification under (b)(1)(B). Although recognizing that there is a split of authority on this issue, *see* Note, *Defendant Class Actions,* 91 Harv.L.Rev. 630, 634 n.22 (1978), this Court has on prior occasions made clear its interpretation of (b)(1) in general and (b)(1)(B) in particular. *See Bentkowski v. Marfuerza Compania Maritima, S.A.,* 70 F.R.D. 401, 404 (E.D.Pa.1976) (noting acceptance of reasoning contained in *La Mar v. H & B Novelty & Loan Company, infra*); *DiCostanzo v. Chrysler Corporation,* 57 F.R.D. 495, 498 n.7 (E.D.Pa.1972) (fact that decision in one case might serve as legal precedent in another not a persuasive reason to recognize class action); *William Goldman Theatres, Inc. v. Paramount Film Distributing Corporation,* 49 F.R.D. 35, 41 (E.D.Pa.1969) (no right to class action simply because opinion in one suit might be cited as precedent in another). In *Bentkowski, supra,* this Court noted its complete agreement with the reasoning contained in *La Mar v. H & B Novelty & Loan Company,* 489 F.2d 461 (9th Cir. 1973) as it pertains to Rule 23(b). The *La Mar* court stated:

> If the individual action inescapably will alter the substance of the rights of others having similar claims, as would an action attacking the reorganization of a fraternal benefit society, the situation falls within Rule 23(b)(1)(B).

Neither the *stare decisis* consequences of an individual action nor the possibility of false reliance upon the improper initiation of a class action can supply either the practical disposition of the rights of the class, or the substantial impairment of those rights, at least one of which is required by Rule 23(b)(1)(B). To permit them to do so would make the invocation of Rule 23(b)(1)(B) unchallengeable. There is no indication in the Advisory Committee's Note that any such "boot strap" effect was intended.

489 F.2d at 467 (footnotes omitted). Clearly, in reliance upon the above authority, this case is not appropriate for (b)(1)(B) class action treatment. *See also McDonnell Douglas, supra,* 523 F.2d at 1086; *Pruitt v. Allied Chemical Corp.,* 85 F.R.D. 100, 108 (E.D.Va.1980); *Barrett v. Thorofare Markets, Inc.,* 77 F.R.D. 22, 26–27 (W.D.Pa. 1977); *Cullen v. New York State Civil Service Comm.,* 435 F.Supp. 546, 560–61 (E.D. N.Y.1977); *Chevalier v. Baird Savings Ass'n,* 72 F.R.D. 140, 157 (E.D.Pa.1976); Advisory Committee's Note, 39 F.R.D. 98, 100–102 (1966).

### C.  *Rule 23(b)(2)*

Likewise inappropriate would be a certification of this defendant class under 23(b)(2). The rule provides for class action treatment when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

As already noted, Count II of the complaint at issue is, in essence, a contract action seeking monetary damages. An examination of plaintiff's prayer for relief demonstrates that the nature of the action is primarily one seeking monetary damages. This is so despite the fact that plaintiff has attempted to couch the relief sought, at least in part, in terms of an injunction:

*While plaintiffs attempt to characterize their complaint as one for declaratory and injunctive relief, it is clear that the final form of the relief obtained would be monetary in nature. Class certification*

*under (b)(2) is not appropriate where the relief requested (or in this case obtained) is monetary in nature. Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43, 53 (D.Del.1974) *aff'd,* 611 F.2d 32 (3d Cir. 1979); 3B Moore's Federal Practice ¶ 23.45[1] at 23–322.

*Simer v. Rios,* 661 F.2d 655, 668 n.24 (7th Cir. 1981)(emphasis added). *See also Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 66 F.R.D. 581, 589–90 (E.D. Pa.1975).

Because the relief sought here is predominantly money damages, now literally millions of dollars, (b)(2) is inapplicable. *See Chevalier, supra,* 72 F.R.D. at 157; *Richardson, supra,* 62 F.R.D. at 421.

### D.  *Rule 23(b)(3)*

The subdivision states in full:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.     .     .     .     .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.* The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(emphasis added). For a number of reasons, the Court does not believe that a class action is the superior method of proceeding with this litigation. First, the interests of the class members in individually controlling their separate actions is a significant factor in this case. As defendants point out, this factor is partly evidenced by the

fact that a number of the cases pending were initiated *by franchisees as plaintiffs.* *See Memorandum In Opposition, supra* at 44. In addition, the amount of money allegedly owed by the proposed class members was $11,000,000 as of March 16, 1981, which is manifestly indicative of a probable desire on the part of individual class members to defend their own respective cases due to the large amounts of money they *each* allegedly owe. *See, e.g., Complaint,* ¶¶ 96–116. The circumstances of this case lead the Court to conclude that the desire on the part of individual franchisees, *particularly as defendants,* to steer the course of their own respective disputes, outweighs the benefits to plaintiff and to the judicial system at large, in terms of economies of time and expense, which a class action would provide. *Compare Kekich v. Travelers Indemnity Co.,* 64 F.R.D. 660, 668 (W.D. Pa.1974) (if each class member's claim valued at $10,000, paramount interest in controlling their own litigation present) *with Bentkowski, supra,* 70 F.R.D. at 404 (relatively minor injuries sustained by class members rendered collective prosecution preferable); *see also* Advisory Committee's Note, *supra,* 39 F.R.D. at 104 ("interests of individuals in conducting separate law suits may be so strong as to call for denial of class action").

Second, there are already a number of cases involving the same controversy pending in this Court. These actions were consolidated for pretrial purposes by the MDL panel. *See* 28 U.S.C. § 1407. Significant progress has been made in some of these cases, including No. 81–1085. Certification of a defendant class will effectively hamper that progress and would probably prove futile given the operation of Rule 23(c)(2). Third, and along the same lines, the desirability of concentrating the litigation in a particular forum is, to a large extent, an irrelevant factor in this litigation. This controversy has already been consolidated through the MDL procedures. Any additional suits which are filed will undoubtedly be transferred here for consolidated pretrial purposes. *See In re Transit Company Tire Antitrust Litigation,* 67 F.R.D. 59, 72 (W.D.

Mo.1975) (even if predominance found, class action may be inappropriate due to superiority of another method); H. Newberg, *Newberg On Class Actions* § 1160d at 273–274 (1977).

The fourth factor specifically suggested for consideration in Rule 23(b)(3), when deciding whether or not the class action is "superior to other available methods for the fair and efficient adjudication of the controversy," is manageability. Naturally pertinent to an analysis of the manageability of a class action (in terms of whether or not it is a superior method) is a comparison of the class action device to other available means of adjudicating the controversy. When compared to individual actions, consolidated for coordinated pretrial purposes via the MDL process, a defendant class action certified under 23(b)(3) is clearly not a superior method of proceeding. To certify this class under (b)(3) and then send or publish notice to a presently indeterminate number of defendants whose very identity is in question, *see Tr.* at 186–87; 199–200, would amount to a grossly futile exercise of a tremendous amount of time and expense by the Court and the parties due to the operation of Rule 23(c)(2). The Court completely agrees with defendants' argument that the proposed defendant-class members would undoubtedly opt out of the class thus rendering a (b)(3) certification, even if otherwise appropriate, a pointless judicial exercise. *See Memorandum In Opposition, supra* at 40. The availability of an election as to inclusion or exclusion is a significant problem with defendant class actions certified under (b)(3) which has led one commentator to note that "it is unlikely that defendants' classes will be effectively used to create a damage fund for a plaintiff . . . ." *Newberg, supra,* § 1148c at 256. This is a valid assessment, especially with regard to this action. It would be patently unrealistic to assume that any of the proposed class members, given the amounts of money they each owe and their probable and natural desire to defend any action in their own respective forums, would voluntarily elect to become a defendant in the class action

sought to be maintained here. Even if individual actions had already been commenced against all of the defendants, this Court does not believe that the presence (or threat) of individual suits would be enough of a disincentive to opting out to render a (b)(3) certification appropriate. *But see In re The Gap Stores Securities Litigation,* 79 F.R.D. 283, 305–306 (N.D.Cal.1978) (pendency of individual lawsuits against defendant class members with potential for greater liability provides disincentive for opting out of a (b)(3) class action); *Research Corp. v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497, 503 (N.D.Ill.1969) (defendant class members who opt out run risk of individual suits).

For the foregoing reasons, the court finds that this action is not maintainable under any of the subdivisions of Rule 23(b) and the motion for certification of a defendant class action will therefore be denied.

### III. *Rule 23(a)(3) & (4)*

Because the question presented by this motion is an important one, and because the Court was presented with "conflicting positions of substance as to how it should exercise its discretion in determining whether to permit a class action," the Court considers it appropriate to briefly set forth its view pertaining to the typicality and adequacy of representation requirements, notwithstanding its conclusion that class action treatment is inappropriate for the reasons stated in Parts I and II of this opinion. *Interpace Corporation v. City of Philadelphia,* 438 F.2d 401, 404 (3d Cir. 1971).

At the evidentiary hearing conducted on January 14th, plaintiff called to the stand William C. Field, III, Esquire, corporate counsel to Arthur Treacher's Fish & Chips, Inc. Mr. Fields testified that since the inception of the franchise system in 1969, plaintiff has "essentially" utilized six different "form" contracts which, over the years, have governed the franchisor-franchisee relationship. *See Tr.* at 108–109; 118; Plaintiff's Exhibits 1–6; *see also* Affidavit of William C. Fields, III, Esquire, Docket Entry No. 330. The witness further testified that the franchisees' duties under these six different contracts are essentially the same in that, *inter alia,* all of the franchisees are required to "pay a royalty to Arthur Treacher's for the use of the trademark and trade name and trade secrets." *Tr.* at 111–12. The witness went on to testify that the plaintiff-franchisor's duties also were essentially the same in each of the contracts. *See Tr.* at 112.

In addition to the testimony of Mr. Fields and the contracts marked and admitted as plaintiff's exhibits one through six, plaintiff marked and the Court admitted certain deposition excerpts which, in plaintiff's view, support its contention that class action treatment is appropriate on the contract claim raised in Count II of the complaint. *See, e.g., Tr.* at 178–79.

Defendants offered very little evidence in opposition to the motion. The cross-examination of plaintiff's witness Fields was, for the most part, an attempt to elicit evidence which would highlight potential manageability problems. *See, e.g., Tr.* at 126–28; 147–48; 161. This testimony was primarily designed to point out potential problems of identifying who are the members of the purported class and the difficulties inherent in assuring fair notice to them. The majority of defendants' case in opposition to certification, however, consisted of legal argument. *See Tr.* at 191–202.

Rule 23(a)(3) & (4) provides: "One or more members of a class may sue *or be sued* as representative parties on behalf of all *only if . . . ,* (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The Court is presently satisfied that the claims or defenses of the representative parties—pertaining to Count II of No. 81–1085 and the issue of unpaid royalties—are similar enough to the claims or defenses of the class that typicality may be present. Plaintiff has introduced evidence that all of the contracts, particularly as they pertain to the obligations on the part of the respective parties to pay royalties on the one hand, and to provide services on the other,

are essentially the same. Thus, the similarity of the contractual forms utilized by ATFC since its inception in 1969 is, in the Court's view, a significant factor favoring a finding of typicality. *Cf. Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487 (W.D.Pa. 1979). In *Marchwinski*, plaintiffs moved for certification of a defendant class in a sex discrimination action brought against an employer and a union as representatives of a group of employers similarly situated to the named defendant, Oliver Tyrone Corporation. Evaluating the propriety of the motion, the Court in *Marchwinski* found the presence of typicality and adequacy of representation partly because of the union contract existing between the parties and acting as a· "specific nexus" bonding the interests of the parties. 81 F.R.D. at 489. Similarly, in this case, while there is not one contract acting as a "specific nexus," there are six form contracts in the Arthur Treacher's system which set forth essentially the same duties and obligations flowing between the parties.

Concomitant with the evidence of lack of significant variations in the contracts themselves, plaintiff also introduced evidence in the form of deposition testimony tending to buttress a finding of similarity of reasons for withholding royalties. *See* Plaintiff's Exhibits 10–25. Furthermore, plaintiff points to the counterclaims of the representative parties as being essentially the same. *See Plaintiff's Reply Brief, supra* at 6. Thus, because the contracts are essentially the same and because we have the testimony of a number of franchisees that royalties were withheld due to a decline in services and deterioration of the system, and also because an examination of the counterclaims filed reveals their similarity, plaintiff contends that Rule 23(a)(3) is satisfied.

Defendants argued that the fact that they all withheld royalties for similar reasons does not necessarily mean that the class as a whole withheld royalties for those same reasons and that plaintiff failed to demonstrate that there are no potentially different problems. *See Tr.* at 191–93. Obviously there must be some potential for

differences among the class members. This alone however, should not defeat the motion. The interests of the parties comprising the class need not be identical, "only similarity is required for the Court to decide that the representative party will adequately represent the interests of the class." *Hummel v. Brennan*, 83 F.R.D. 141, 145 (E.D.Pa.1979) (citations omitted). It is clear that even if there exist minor factual variations pertaining either to plaintiff's differing treatment of defendants, or to defendants' differing reactions to plaintiff, these potential different fact patterns underlying what the Court believes would be typical claims or defenses should not defeat class treatment in this case. *See United States v. Trucking Employees, Inc.*, 75 F.R.D. 682, 688 (D.D.C.1977).

Obviously related to the issue of typicality is the question of adequacy of representation. *See generally* 7 Wright & Miller, Federal Practice and Procedure: Civil §§ 1764–1765 (West 1969). This fourth requirement found in Rule 23(a) is probably the most important, particularly when dealing with a proposed class of defendants. *See Marchwinski, supra*, 81 F.R.D. at 489 ("very notion of a defendant class raises immediate due process concerns"); *In re The Gap Stores, supra*, 79 F.R.D. at 292 (defendant class action demands greater attention to due process rights); *Institutionalized Juveniles, etc. v. Secretary of Public Welfare*, 78 F.R.D. 413, 414 (E.D.Pa.1978) (most important area of inquiry). Without careful adherence to this prerequisite the due process problems in attempting to bind an absent class member are manifest. *See Hansberry v. Lee*, 311 U.S. 32, 40–44, 61 S.Ct. 115, 117–119, 85 L.Ed. 22 (1940).

Attempting to formulate a standard for determining whether the interests of the absent class members will be adequately represented and fairly protected, courts tend to seize upon two criteria—the presence of capable counsel to pursue the litigation on behalf of the class and the absence of conflicting interests between the named representative and the unnamed class members. *See, e.g., Hummel, supra*, 83 F.R.D.

at 145–146; *In re The Gap Stores, supra,* 79 F.R.D. at 303; *Trucking Employers, Inc., supra,* 75 F.R.D. at 687. The Court is presently satisfied that both these criteria are present here. The named defendants in this action have vigorously advocated their interests and undoubtedly will continue to do so. By this process they would necessarily assure the protection of the absentee members' interests because there are no readily apparent interests either on the part of the purported class representatives or the unnamed defendants which are in serious conflict. The Court is not suggesting that these interests are coextensive but they need not be, so long as any differences which may exist do not threaten the viability of class treatment itself.

In short, while the criteria contained in Rule 23(a) appear to have been met in this case, the Court nevertheless finds, for the reasons contained in Parts I and II, *supra* that this is not an appropriate case for class action treatment under any subdivision of Rule 23(b). An Order follows denying the instant motion and requiring plaintiff to appropriately amend the pleadings to eliminate class action allegations. Rule 23(d)(4).

### ORDER

AND NOW, this 9th day of March, 1982, it is hereby ORDERED that the Motion Of Plaintiff Arthur Treacher's Fish & Chips, Inc. For Certification Of A Defendant Class is DENIED.

It is FURTHER ORDERED that plaintiff shall, within twenty (20) days of the date of this ORDER, appropriately amend Count II of the complaint, eliminating therefrom the class action allegations.