Laura ANGELASTRO, on behalf of
herself and all others similarly
situated, Plaintiff,

v.

PRUDENTIAL–BACHE SECURITIES,
INC. and Bache Halsey Stuart
Shields, Inc., Defendants.

Civ. A. No. 83–1270.

United States District Court,
D. New Jersey.

Dec. 9, 1986.

See also 764 F.2d 939.

Greenfield & Chimicles by Richard D.
Greenfield, Haverford, Pa. Klehr, Harrison, Harvey, Branzburg, Ellers & Weir by
Donald M. Harrison, Cherry Hill, N.J., for
plaintiff and the Class.

Barrack, Rodos & Bacine by Daniel E.
Bacine, John G. Narkin, Cherry Hill, N.J.,
for defendants.

GERRY, District Judge.

This is a securities fraud case brought
pursuant to the Securities Exchange Act of
1934, 15 U.S.C. § 78a *et seq.* Specifically,
plaintiff alleges that defendants Prudential-Bache Securities, Inc. ("Prudential-Bache") and Bache Halsey Stuart Shields,
Inc. ("Bache") (Prudential-Bache's predecessor in interest) violated Section 10(b) of
the Exchange Act, 15 U.S.C. § 78j(b), and
Rules 10b–5 and 10b–16 promulgated thereunder by the Securities and Exchange Commission.

The complaint in this action was filed by
plaintiff Laura Angelastro on April 12,
1983. According to the complaint, plaintiff
maintained a margin account with the defendants and purchased and sold various
securities as a result of the defendants'
wrongful conduct. Plaintiff alleges that
commencing on a date prior to January 1,
1977 and continuing thereafter, Bache engaged in practices which operated as a
fraud and deceit upon plaintiff and other
customers of Bache. Plaintiff contends
that Bache omitted to state material facts
necessary in order to make statements
made to plaintiff and other customers not

misleading. The seven categories of material facts which plaintiff believes Bache should have disclosed are set forth in paragraph 16 of the complaint and involve the following matters: (a) advance notice of the interest rate charged to margin customers; (b) disclosure of the formula by which interest charges were assessed; (c) computation of daily interest charges assessed against margin accounts; (d) effect of increases in the market value of the underlying securities; (e) variable interest rates available to margin customers and the procedures by which variable rates could be obtained; and (f) inadequate training and supervision of employees resulting in the dissemination of inadequate or inaccurate information to customers.

As a result of the defendants' "failure to disclose" the material facts just described, plaintiff alleges that she and other customers of the defendants purchased substantial quantities of securities for excessive consideration. Plaintiff further alleges that as a consequence of uniform and systematic concealment of material facts by defendants, the margin customers of Bache had no way of effectively calculating, at the time of purchase, the full cost of the securities. Since plaintiff believes that she is one of several thousand margin customers of the defendants, all of whom have been similarly injured by the defendants' wrongful conduct, plaintiff seeks to maintain the action as a class action.

This case is presently before the court on two motions. First, plaintiff has filed a motion requesting that this action be certified as a class action pursuant to F.R.Civ.P. 23. In addition, plaintiff has filed a motion for partial summary judgment pursuant to F.R.Civ.P. 56.

## I. MOTION FOR CLASS CERTIFICATION

Plaintiff has moved for an order determining that this action may be maintained as a class action under F.R.Civ.P. 23(a), as well as 23(b)(2) and (3). Plaintiff wishes to bring this action on behalf of all persons who purchased securities through margin accounts maintained with defendants Prudential-Bache Securities, Inc. or Bache Halsey Stuart Shields, Inc. from January 1, 1977 through December 31, 1982.

The scope of the instant class certification motion has been clarified in the plaintiff's reply memorandum in support of class certification. Plaintiff's original motion papers—which were submitted over three years ago, just prior to the interlocutory appeal in this case—suggested that all of the allegations set forth in the complaint were susceptible of resolution on a class-wide basis. That is, plaintiff argued that all margin account customers of the defendants were exposed to the same misstatements and omissions pursuant to a course of wrongful conduct carried on by defendants throughout the class period. In their recent, post-appeal response, defendants submitted a rather voluminous opposition brief which argued that plaintiff could not possibly satisfy the requirements of F.R.Civ.P. 23(a), let alone the requirements of F.R.Civ.P. 23(b)(2) or 23(b)(3). A substantial portion of the defendants' brief was devoted to the argument that class action treatment is wholly inappropriate here because of the highly individualized nature of the relationship between the defendant brokerage firms and their clients. In defendants' view, this is an "oral misrepresentation" case, with the representations varying from client to client. In her reply brief to this lengthy opposition brief, plaintiff made the following representation:

> Because plaintiff has not had the opportunity to take discovery with respect to the factual matters raised by defendants' brief and affidavit, she will limit her motion for class certification solely to the 360/365–day year issue, which by itself is a class-wide and uniform issue affecting each class member uniformly.

(Plaintiff's reply brief in support of class certification, p. 1, n. 1.) Thus, it appears that plaintiff is presently abandoning her efforts to obtain class treatment for all issues raised by the complaint and is instead limiting her request for class determination to one issue only.

The prospect of certifying a class on less than all of the issues presented in a case is expressly contemplated by F.R.Civ.P. 23(c)(4)(A). According to this portion of Rule 23, when appropriate, "an action may be brought or maintained as a class action with respect to particular issues. . . ." The theory behind this rule is "that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member." 7B Wright & Miller, *Federal Practice and Procedure*, § 1790 (2d ed. 1986). Thus, it has been held that a class may be certified even though only one common issue can be identified as appropriate for class action treatment. *St. Augustine High School v. Louisiana High School Athletic Association*, 270 F.Supp. 767, 774 n. 8 (E.D.La.1967), *aff'd*, 396 F.2d 224 (5th Cir.1968).

### A. THE REQUIREMENTS OF RULE 23(a)

Having determined that plaintiff's effort to secure class treatment as to only one of many claims is procedurally proper, we now consider whether plaintiff has demonstrated that this claim otherwise satisfies the requirements of Rule 23. According to F.R.Civ.P. 23(a), an action may be brought as a class action only if each of the following prerequisites is satisfied:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law and fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

The court will address each of those factors in turn.

### 1. NUMEROSITY

The class which plaintiff asks us to certify would consist of all Prudential-Bache margin account customers between January 1, 1977 and December 31, 1982. According to the affidavit of Milton Wiener, associate vice president of Prudential-Bache, during the period from 1977 to 1982, approximately 190,000 margin agreements were received and processed by Prudential-Bache's New Accounts Department. In addition, as of January 1, 1977, there were already "thousands" of margin accounts existing at Prudential-Bache. (Wiener aff. ¶ 2–3.) While we cannot say for certain how many persons would fall within the proposed class, the Wiener affidavit demonstrates that, at a minimum, 190,000 would. Without question, this is sufficient to satisfy the numerosity requirement.

### 2. COMMONALITY

The second requirement of Rule 23(a) is that there be questions of law or fact common to the class, although not all questions of law or fact raised need be common. *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); 7A Wright & Miller, *Federal Practice & Procedure*, § 1763 (2d ed. 1986). Now that plaintiff has limited her request for class certification solely to the "360/365–day year issue," we believe that this criterion is satisfied. By narrowing the issues for class treatment in this fashion, "[t]he focus is on the contents of the *documents* furnished to plaintiff and the other class members by Prudential-Bache which purport to disclose the interest rates charged and to explain the terms of plaintiff's margin account." (Plaintiff's reply memorandum in support of class certification at p. 4.) It appears that the two documents which are allegedly involved—a document entitled "Disclosure Statement" and a monthly statement entitled "Securities Account Statement"—were disseminated to all margin account customers. Obviously, this suggests that common questions of fact are involved. In addition, common questions of law exist since plaintiff's legal theory is that defendants violated Section

10(b) of the Securities Act and the Rules promulgated thereunder by failing adequately to disclose in these uniformly disseminated documents the use of a 360–day year in computing interest.

### 3. TYPICALITY

Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of the claims or defenses of the class. The meaning of this third requirement has posed a great deal of difficulty for courts and commentators through the years. Indeed, Professor Moore has concluded that there is no need for this requirement at all "since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23." 3B Moore's *Federal Practice*, ¶ 23.06–2. The Third Circuit rejected this extreme view in the *Weiss* case, and instead cited with approval the approaches taken in Wright & Miller and the Eighth Circuit opinion in *Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *Weiss*, 745 F.2d at 809 n. 36. Under the Wright & Miller approach, "Rule 23(a)(3) may have independent significance if it is used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members of the class, even though common questions of law or fact are raised." 7A Wright & Miller, § 1763 (2d ed. 1986). This formulation of the typicality requirement addresses "the danger that the unique circumstances or legal theory will receive inordinate emphasis, and that the other claims will not be presented with equal vigor or will go unrepresented." *Weiss*, 745 F.2d at 809 n. 36. In the *Donaldson* opinion, the typicality prerequisite was variously described as a requirement that there be other members of the class who have the same or similar grievances, *Donaldson*, 554 F.2d at 830; that the charge be based on patterns or practices not special or unique to plaintiff, *id.* at 831; that a significant number of other members of the class have been similarly victimized by the same patterns or practices. *Id.*

As the Third Circuit noted in *Weiss*, the effect of these formulations is to give the term "typicality" a common sense interpretation. *Weiss*, 745 F.2d at 809 n. 36. The "bottom line" is that "where the plaintiff's factual or legal stance is not characteristic of that of other class members, the typicality prerequisite has not been met." *Weiss*, 745 F.2d at 809. Applying these principles to the case before us, we find no evidence that the plaintiff's factual or legal stance is not characteristic of other class members. There is no reason to suspect that plaintiff's experience as a margin account customer with Prudential-Bache was "atypical" in any respect. This is not to say, as we discuss in greater detail below, that plaintiff's claim is identical with that of the other putative class members. Rather, it simply means that plaintiff's circumstances do not appear to be so unique as to preclude class treatment.

### 4. ADEQUACY

The final requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. In *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), the Third Circuit described this requirement in the following fashion:

> Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

In the present case, the defendants do not challenge the competence of plaintiff's counsel to conduct this litigation. The court agrees that this first prong of the *Wetzel* test is satisfied. The defendants have failed to address the second prong of the *Wetzel* test in their submissions. From the materials before us, however, we have no reason to believe that the plaintiff's interests are antagonistic to the proposed class.

In sum, then, we find that the prerequisites to a class action set forth in Rule 23(a) are satisfied here.

## B. THE REQUIREMENTS OF RULE 23(b)

According to Rule 23(b), an action may be maintained as a class action only if the prerequisites of subdivision (a) are met and, in addition, one of the three conditions of subdivision (b) is also satisfied. In the case at bar, plaintiff contends that the requirements of 23(b)(2) and 23(b)(3) have been met. These two conditions read, in pertinent part, as follows:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. RULE 23(b)(2)

█ Plaintiff's complaint seeks, *inter alia,* injunctive relief requiring Prudential-Bache to cease violating section 10(b) and to disclose, in a uniform statement or manner conforming to Rules 10b–5 and 10b–16, the method by which margin account interest is calculated. Nevertheless, the defendants urge that "[p]laintiff's request for class certification should be denied out-of-hand" for two reasons. (Defendants' memorandum in opposition to plaintiff's motion for class action determination at p. 9.) First, defendants point out that the purported class ended, by its own terms, nearly 3½ years ago. As a result, defendants argue, the class cannot possibly claim injunctive relief with respect to defendants' current margin practices. Second, the defendants contend that class certification is inappropriate in actions such as this, where the primary relief sought by plaintiff is monetary damages. Plaintiff's reply memorandum and supplemental reply memorandum are both silent on these points.

The first of the defendants' objections—i.e., that injunctive relief is unavailable to plaintiff and the proposed class—is appealing but is unfortunately not accompanied by any reference to case authority. However, this is of no consequence since we find the defendants' second objection to be dispositive. The prevailing view in this circuit is that "23(b)(2) is only applicable where the relief sought is exclusively or predominately injunctive or declaratory in nature." *Al Barnett & Sons, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43, 53 (D.Del.1974), *aff'd,* 611 F.2d 32 (3d Cir. 1979); *see also In re Arthur Treacher's Franchise Litigation,* 93 F.R.D. 590 (E.D. Pa.1982). Conversely, 23(b)(2) has been held inapplicable when the relief sought in the complaint is predominantly money damages. *In re Arthur Treacher's,* 93 F.R.D. at 594. Based on the court's review of the complaint in this matter, we cannot conclude that "the relief sought is exclusively or predominantly injunctive" in nature. Accordingly, plaintiff's motion to certify the class pursuant to Rule 23(b)(2) must be denied.

### 2. RULE 23(b)(3)

█ Plaintiff additionally requests the court to certify the class pursuant to F.R. Civ.P. 23(b)(3). In order to do so, we would have to conclude, as a threshold matter, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." For the reasons which follow, we believe that plaintiff cannot satisfy this threshold requirement.

In order to prevail on a section 10(b) claim, a plaintiff must, in general terms, prove: a misrepresentation or omission of material fact by the defendant; plaintiff's reliance upon that material misrepresentation or omission in making an investment decision; and resultant damages. *See, e.g.,*

*Jaksich v. Thomson McKinnon Securities, Inc.*, 582 F.Supp. 485, 493 (S.D.N.Y.1984). Plaintiff here contends that in determining whether common questions predominate, the court's inquiry should be directed toward liability, since the computation of damages will be a purely mechanical task. Even if we were to assume that plaintiff is correct in the latter assertion—a point which is hotly contested by the defendants—we find that class treatment is nevertheless inappropriate since individual issues of liability will predominate our common issues.

At the heart of the liability question is the proof of a plaintiff's reliance on the misrepresentation or omission. Plaintiff argues that this question may be resolved on a classwide basis because: (1) this case involves "omissions" rather than "misrepresentations"; and (2) in an "omissions" case, reliance may be presumed. Predictably, the defendants counter this by arguing that: (1) this is a misrepresentation case; and (2) therefore reliance cannot be presumed but must be proved.

The most recent guidance out of the Third Circuit on this issue appears in *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). In *Sharp*, the Third Circuit reaffirmed the notion that reliance is an essential element of a section 10(b) case. The circuit court then observed that in a number of instances, courts have held that reliance may be presumed. The general rule which emerged from those cases was that the presumption of reliance is proper in cases of alleged omissions, and improper in cases of alleged misrepresentations. The *Sharp* court, however, declined to follow blindly this omission-misrepresentation distinction, primarily because of the confusion such a dichotomy would cause in a case involving both omissions and misrepresentations. Instead, the Third Circuit embraced the view of the Second Circuit. "We therefore presume reliance only 'where it is logical' to do so." *Sharp*, 649 F.2d at 188, *quoting Lewis v. McGraw*, 619 F.2d 192, 195 (2d Cir. 1980), *cert. denied*, 449 U.S. 951, 101 S.Ct.

354, 66 L.Ed.2d 214 (1980). The Third Circuit concluded "that the proper approach to the problem of reliance is to analyze the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance." *Sharp*, 649 F.2d at 188; *see also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), *reh. denied*, 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 and 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972) ("positive proof of reliance" not required "under the circumstances of this case").

In the present case, the court believes that plaintiff should not be accorded a presumption of reliance. To allow such a presumption under the circumstances here would be both illogical and inequitable to the defendants. *See Sharp*, 649 F.2d at 188. Contrary to the plaintiff's assertions, this is not a case in which the rationale underlying omissions cases has any application. In those cases, "[t]he reason for shifting the burden on the reliance issue has been an assumption that the plaintiff is generally incapable of proving that he relied on a material omission. (Citations omitted.) This incapacity arises from the difficulty of proving a speculative state of facts: Had the facts not been omitted, would plaintiff have acted on the information made available and thereby averted his loss?" *Sharp*, 649 F.2d at 188. Or, as one commentator put it, "[s]ince nothing is affirmatively represented in a non-disclosure case, demanding proof of reliance would require the plaintiff to demonstrate that he had in mind the converse of the omitted facts, which would be initially impossible to demonstrate in most cases." Note, *The Reliance Requirement in Private Actions Under SEC Rule 10b–5*, 88 Harvard Law Review, 584, 590 (1975) (footnote omitted). Although plaintiff here tries to characterize her action as a non-disclosure case by alleging that the defendants "failed adequately to disclose the formula pursuant to which interest charges were assessed," a review of the plaintiff's briefs demonstrates that the characterization is mislead-

ing. For purposes of the pending motions, plaintiff has conceded that she received the initial Disclosure Statement and the Monthly Securities Account Statement. Moreover, plaintiff concedes, as she must, that both of these documents set forth in writing the method employed in calculating a margin customer's interest charges. The thrust of the plaintiff's contentions is that this explanation was too convoluted to be comprehensible, and therefore was inadequate. As a result, the stated interest rate—the rate appearing on the front of the monthly statement—was misleading, since the actual rate of interest (based on a 365–day year) was higher than the stated interest rate (which is based on a fictional 360–day year). Thus, plaintiff's primary concern is not the defendants "failure" to set forth any facts; instead, plaintiff is concerned about the manner in which certain facts were set forth. Under such circumstances, we see no sound reason for shifting the burden of proof on reliance to the defendants. Since all the tools for computing margin interest charges were before the margin customer—albeit arguably in a misleading fashion—it could be that some of the investors knew and understood how their interest charges were being calculated. As to these investors, there would be no "reliance" on the understated rate. Hence, it would be inappropriate to presume reliance on a class-wide basis.

Since the plaintiff here cannot rely on a presumption of reliance, she and each of the 190,000 class members would have to come into court individually and prove that issue at trial. Obviously, such a procedure would be unmanageable. Accordingly, we find that common questions would not predominate over individual questions, and therefore the motion to certify the class pursuant to F.R.Civ.P. 23(b)(3) must also be denied.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff has additionally moved for partial summary judgment on her individual claim relating to the 360/365–day year issue. However, as the court has just discussed, in order for a plaintiff to prevail on a section 10(b) claim, plaintiff must prove reliance. Since we have held that this reliance may not be presumed, Laura Angelastro must prove that she *actually* relied on the allegedly misleadingly-stated interest rate. On the basis of the submissions before us, we cannot conclude, as a matter of law, that such reliance is present. Indeed, the only specific information that we have regarding plaintiff's alleged reliance would serve to cut the other way. In her answer to interrogatory 11(d), plaintiff acknowledges the following:

Plaintiff cannot recall the exact identity of any document or communication which she claimed she and her late husband relied upon in making specific purchases of securities.

At the very least, there exists a genuine issue of material fact regarding plaintiff's reliance on the alleged misrepresentation. This factual issue precludes the entry of partial summary judgment in plaintiff's favor.

## III. CONCLUSION

In sum, the court finds that plaintiff's motion for class certification and plaintiff's motion for partial summary judgment must both be denied. Defendants shall submit an appropriate order consistent with this opinion.