**Albert M. ZLOTNICK, on behalf of himself and all others similarly situated,**

v.

**TIE COMMUNICATIONS, INC. and L.W. Kifer.**

**Civ. A. No. 85–1364.**

United States District Court, E.D. Pennsylvania.

Dec. 2, 1988.

Donald B. Lewis, Philadelphia, Pa., David B. Zlotnick, Bala Cynwyd, Pa., for Zlotnick.

David H. Pittinsky, Philadelphia, Pa., Skadden Arps Slate Meagher & Flom, Edward J. Yodowitz, Steven Kronengold,

New York City, for TIE Communications, Inc.

## MEMORANDUM

GILES, District Judge.

Plaintiff Albert M. Zlotnick filed this suit as a class action on March 13, 1985. He alleged that the defendants artificially inflated the price of Technicom's stock, which he sold short, causing him to suffer a loss when he covered his short position. Plaintiff relied on Sections 9 and 10(b) of the Securities Exchange Act of 1934 and on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, (RICO). Zlotnick's amended complaint was dismissed on June 26, 1987 for failure to satisfy the reliance requirement of Section 10(b) and Rule 10b–5 of the Exchange Act. He had argued that he was entitled to a presumption of reliance pursuant to a fraud on the market theory. He had not alleged reliance on defendants' alleged misrepresentations.

This court held that Zlotnick did not rely on the integrity of the market, but instead chose to bet against it and thus was not entitled to a presumption of reliance. Zlotnick appealed to the third circuit, which vacated the order dismissing the action, stating that "[w]e hold no more than that Zlotnick is entitled to a chance to prove.... that he did actually rely on the inflated market price in making his decision to cover." *Zlotnick v. Tie Communications,* 836 F.2d 818, 823 (3d Cir.1988). The third circuit upheld this court's refusal to presume that Zlotnick had relied on the defendants' alleged misrepresentations in making his decision to cover.

Pursuant to Fed.R.Civ.P. 23(b)(3), Zlotnick now seeks certification of a class of all persons or entities who purchased Technicom stock to cover a prior short sale of Technicom stock between January 4 and September 30, 1983 and thereby suffered a loss.

### I. *Rule 23(a)*

■ To maintain a suit as a class action, the named plaintiff has the burden of establishing that each of the four threshold requirements of Fed.R.Civ.P. 23(a) are met. These requirements are commonality, typicality, numerosity, and adequacy of representation. A failure to satisfy any one of these four requirements is fatal to a motion for certification. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975); *In re Asbestos School Litigation,* 104 F.R.D. 422 (E.D.Pa.1984) and 107 F.R.D. 215 (E.D.Pa. 1985) *aff'd in part and reversed in part,* 789 F.2d 996 (3d Cir.1986) *cert. denied,* 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986).

### 1. *Numerosity*

To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." Fed.R. Civ.P. 23(a)(1). Courts have not specified numerical limits for class certification and have certified classes with as few as twenty members. *Caruso v. Celsius Insulation Resources,* 101 F.R.D. 530, 533 (M.D. Pa.1984) (citing 7 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure,* § 1762). Plaintiff alleges that, although the precise number of class members cannot be determined prior to discovery, it is evident that the class would meet the numerosity requirement. Plaintiff alleges that over 225,000 shares of Technicom were sold short during the class period and in excess of 5,000,000 shares of Technicom were purchased during that period. Zlotnick asserts that, in light of the volume of short selling and purchasing of stock during the period in question, it appears "highly likely" that one hundred persons would be identified as members of the class.

In support of this contention, plaintiff has submitted the affidavit of R. Alan Miller, President of Philadelphia Investment Banking Company. Mr. Miller stated in his affidavit that the class consists of a minimum of 50 persons and is highly likely to consist of over 100 injured individuals. Mr. Miller based this estimate on his review of the extent of the short interest and the

extent of the stock purchase activity in the Technicom stock during the relevant period. Miller Aff., Plaintiff's Reply Memorandum, Ex. C.

Defendants counter that it is not possible to predict the number of class members based on the number of shares sold short and the total number of shares sold. They argue that "even if 100 million shares of Technicom were purchased during the purported class period, such purchases would offer no indication of the amount of short positions that were covered, if any."

Defendants further argue that an analysis of the "short interest" in Technicom during the class period contradicts Zlotnick's claim of numerosity. Referencing the American Stock Exchange short interest table (the number of shares sold short per month), defendants argue that the shares sold short increased rather than decreased during the period in question. Based on this increase in short sales, defendants conclude there is no logical basis on which to assert that numerous short sellers covered their purchases during this period.

The threshold for establishing numerosity is relatively low. Although defendants' arguments may have some merit, plaintiff's expert's estimate suffices at this stage in the proceedings. I find that plaintiff meets the numerosity requirement.

2. *Commonality*

■ Rule 23(a)(2) requires "questions of law or fact common to the class." The threshold for commonality is not high and not all questions of law or fact raised need be common. *In re School Asbestos,* 789 F.2d at 1110; *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir.1984).

Zlotnick asserts that the main issue as to all members of the class is whether the defendants artificially inflated the market for the securities of Technicom during the period in question. He cites *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), in support of his position. In *Blackie,* the defendants were charged with inflating the price of stock purchased by class members by understating their reserves, overstating

their inventory, and using improper accounting principles. The court held that:

The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

524 F.2d at 902. (citations omitted).

It is clear that there are common issues of law and fact present in this case and I find that the plaintiff has met the requirements of commonality as required under Rule 23(a)(2). Whether these common issues predominate over individual issues as required under Rule 23(b)(3) will be discussed in Part II below.

3. *Typicality*

Interpretation of the Rule 23(a)(3) typicality requirement focuses on the "similarity of legal and remedial theories." *Brown v. SEPTA,* C.A. Nos. 86–2229, 86–4037, 86–5886, slip op. at 10 (E.D.Pa. April 8, 1987) [1987 WL 9273]. A liberal construction of the typicality requirement may be applied as long as no express conflicts exist between the class representative and the class. *See Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977). In this respect the typicality requirement overlaps with the Rule 23(a)(4) requirement since it ensures that absent class members will be adequately represented. *Cumberland Farms v. Browning–Ferris Industries,* 120 F.R.D. 642, 646 (E.D.Pa.1988).

■ The typicality requirement is generally met if the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of the other class members and is based on the same legal

theory. *Cumberland Farms*, at 646. Plaintiff claims that the central issue of this litigation is "whether the defendants engaged in a course of conduct violative of the federal securities laws by disseminating false information and engaging in trading activity and other manipulative conduct which had the effect of artificially inflating the market price of Technicom stock, causing plaintiff and the members of the class who sold the stock short to sustain damages when covering their short positions." Plaintiff's Memorandum at 15. Plaintiff argues that he and all class members would have to prove the existence of the same course of conduct by defendants and, as such, his claims are coextensive, or "typical" of those of all of the class members.

Defendants argue that Zlotnick's individual claim is subject to unique defenses which render his claim atypical. These alleged defenses are that Zlotnick had knowledge of the alleged misrepresentations by defendants and that his credibility is subject to serious question.

Defendants offer plaintiff's deposition testimony as evidence that he was aware of the alleged misrepresentations by the defendant companies. They cite Zlotnick's statement that his broker had advised him to sell Technicom stock short because of information his broker had received that the stock was "hyped" or overpriced. Zlotnick testified that, prior to his second short sale, his broker told him that the stock was overpriced because the company was "bullying" the stock, or "issuing false statements." Zlotnick Dep. at 119, 136.

Defendants cite the following excerpt from Zlotnick's deposition as evidence that he was aware of the alleged misrepresentations by the defendants at the time he covered the stock:

Q. You testified earlier that you felt the pressure of the stock of Technicom going up. Did you feel the pressure on March 14, 1983?

A. Did I?

Q. Yes.

A. Probably a little more than I did the day before.

Q. And that was the cause of your covering your short position?

A. You got it.

Q. As far as Mr. Saltzman's [sic] source, did you come to disbelieve the reliability of that source?

A. No. I just couldn't afford to stay with it anymore. Zlotnick Dep. at 155.

Plaintiff counters that, while Zlotnick may have heard the comments of his broker, he had no knowledge of the alleged "spurious in-house contracts between TIE and Technicam that were cancelled, misleading announcements of joint sales and other manipulative activity." Plaintiff's Reply Memorandum at 20.

Defendants next argue that they have a strong defense in their argument regarding Zlotnick's credibility and that this issue may well become the focus of the trial, to the harm of the class members. Defendants cite a line of cases which have held that the existence of unique attacks against the proposed class representative's credibility is sufficient, in and of itself, to defeat a motion for class certification. *See e.g. Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983); *Darvin v. International Harvester Co.*, 610 F.Supp. 255 (S.D.N.Y.1985). Defendants also cite *Wagner v. Lehman Brothers Kuhn Loeb Inc.*, 646 F.Supp. 643, 660 (N.D.Ill.1986), which held that a credibility question need not be resolved against the proposed class representive in order to bar class certification on that basis. The court noted that it is enough that the court is aware of such a problem and its potential adverse impact on the class.

Defendants attack Zlotnick's credibility on the basis of "discrepancies between his pleadings and facts that have surfaced during discovery." Defendants' Memorandum at 22. Defendants point out that Zlotnick did not disclose a third short sale of Technicom stock. Defendants allege that, had the Court of Appeals for the Third Circuit been made aware that Zlotnick had made a third short sale only 2½ weeks prior to covering, it may have been more than skeptical about such a fundamental change in investment strategy and "may have found it inconceivable that Zlotnick relied at any

time on the integrity of the price of the stock." Defendants' Memorandum at 23.

Defendants further attack Zlotnick's credibility based on his allegation that he did not learn of the alleged stock manipulations until 1985, despite his testimony concerning his knowledge of the overvaluation of the stock, discussed above, and the effect of this knowledge on his decision to sell short in 1983. Defendants also allege that Zlotnick was inconsistent in his testimony, sometimes stating that he had no reason to doubt his broker's assertions that the stock was overvalued and, at other times, stating that he had a "great deal of doubt about it." Zlotnick Dep. at 155, 163.

Defendants conclude that these defenses would interfere significantly with the merits of the class claims and, at the very least, present "arguable defenses" that would jeopardize the rights of the absent class members.

While defendants' defenses may have some merit, I do not find that they have shown the existence of an express conflict between Zlotnick and the proposed class. *See Bogosian*, 561 F.2d at 449. The threshold for establishing typicality is low. Plaintiff's claim arises from the same course of conduct that gives rise to the claims of the proposed class and is based on the same legal theory. *Cumberland Farms*, at 646. I do not find that the attacks on plaintiff's knowledge or credibility are unique and thus render his claims atypical.

### 4. *Adequacy of Representation*

■ Rule 23(a)(4) requires that plaintiff "fairly and adequately protect the interest of the class." Fed.R.Civ.P. 23(a)(4). Adequate representation depends on two factors: (1) the qualification and competence of plaintiff's attorney; and (2) whether plaintiff's interests are antagonistic to the class. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). The latter has been addressed above in the discussion of typicality.

Defendants contest plaintiff's adequacy as a class representative on the grounds that plaintiff's counsel is his son, David Zlotnick. Defendants cite a long line of cases in which courts have held that a close familial relationship between a class representative and class counsel creates a potential conflict of interest which precludes adequate representation. These courts have so held based on the unnecessary appearance of impropriety created by such a relationship.

In *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D.Mass.1987), the court held that, where the class plaintiff was the father of a partner in one of six law firms serving as counsel to the class, the proposed class plaintiff must be disqualified. The court so held on the grounds that the "father could be unduly influenced by the possible benefit his son receives in attorneys' fees, even if the father does not financially benefit from the fees himself." 116 F.R.D. at 309. The court cited further problems with the father's lack of interest and involvement in the case. The court found that the father relied heavily on his son's judgment and that this reliance, in conjunction with the potential conflict of interest raised by the son's receipt of attorney's fees, necessitated disqualification of the father as the class representative.

Defendants claim that the present case is identical to *Kirby*. Zlotnick's son will receive attorney's fees in the event of a victory by the class. In addition, defendants claim that it was David Zlotnick, not Albert Zlotnick who was the "catalyst" behind this lawsuit and that, as in *Kirby*, Albert Zlotnick "relie[s] heavily on his son's judgment." 116 F.R.D. at 310. They claim that Albert Zlotnick had no knowledge of the substance or timing of his amended complaint and that he testified that his knowledge as to the substance of his complaints was "[o]nly what David told me." Zlotnick Dep. at 101, 115. Albert Zlotnick's testimony in his deposition indicates that he only recalled meeting with co-counsel Donald B. Lewis on "approximately" two occasions. The only time that he actually remembered meeting with Lewis was the day

prior to his deposition, which took place three years after the commencement of this litigation. Zlotnick Dep. at 67–68.

■ I find, based on the arguments raised by defendants above, that plaintiff has failed to show that he is an adequate representative for the proposed class. The circumstance which gave rise to the class representative's disqualification in *Kirby* are also present in this case and I find the district court's reasoning in *Kirby* to be persuasive. The risk of an unnecessary appearance of impropriety is possible, even likely, in this case. Plaintiff argues that the proper solution under these circumstances is to disqualify David Zlotnick as co-counsel, not to disqualify Albert Zlotnick as class representative. While this might be true if the other requirements for a class action were met, I find that essential requirements have not been met. *See* § II, *infra.*

## II. *Rule 23(b)(3)*

Plaintiff has failed to show that the action qualifies for treatment under one of the three subdivisions of Rule 23(b), which is also necessary in order to justify the certification of a class. Plaintiff attempts to have the class certified under Rule 23(b)(3), which applies to class actions where the class is primarily seeking money damages. The rule requires that common questions of law or fact predominate over individual questions and that class treatment is superior to other available procedures. Fed.R.Civ.P. 23(b)(3).

Defendants argue that, in light of the third circuit's instructions on remand in the present case, individual issues predominate. The third circuit denied Zlotnick any presumption of reliance on his fraud on the market theory and remanded to give Zlotnick the opportunity to prove his actual reliance. 836 F.2d at 823. Defendants assert that proof of individualized reliance from each member of the proposed class prevents the certification of a class because individual issues would then overwhelm common ones.

In the recent case of *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed. 2d 194 (1988), the Supreme Court held:

Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones. 108 S.Ct. at 989.

Defendants also cite the reasoning in *Angelastro v. Prudential–Bache Securities*, 113 F.R.D. 579, 585 (D.N.J.1986), in support of their position. In *Angelastro*, the court denied plaintiff's motion for class certification on the grounds that the proposed class was not entitled to a presumption of reliance pursuant to their fraud on the market theory. As such, the court found that it would be unmanageable to attempt to maintain the case as a class action because each class member would be required to prove reliance on an individual basis. 113 F.R.D. at 585.

Plaintiff argues that the statement by the Supreme Court in *Basic* is dictum and that neither *Basic* nor *Angelastro* overrules the holding of the third circuit in *Eisenberg v. Gagnon* 766 F.2d 770, 785 (3d Cir.1985). In *Eisenberg*, the third circuit held that the district court had abused its discretion in refusing to certify a class on the grounds that individual issues of reliance existed.

I find the reasoning of *Basic* and *Angelastro* to be persuasive and further find that it does not conflict with the holding of *Eisenberg*. In *Eisenberg*, the appellate court qualified its holding that the class action should go forward by stating that the case before it "did not present extraordinarily complex questions of causation or reliance...." 766 F.2d at 786. *See also McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32, 38 (E.D.Pa.1985) (holding that class action was appropriate despite need for individualized proof of reliance but that "further development of the record may demonstrate that establishing reliance will require such extensive individualized proof that common issues of law and fact no longer predominate.")

Defendants correctly assert that the present case presents extraordinarily com-

plex questions of reliance and would require extensive individualized proof. Each member of the class must prove, in the face of the third circuit's skepticism regarding Zlotnick's "fundamental change in investment strategy", that he or she did in fact rely on the integrity of the price of Technicom stock when covering his or her short position. Each class member's assertion of reliance will be heavily contested in light of his or her decision to sell the same stock short a short period prior to his or her decision to cover. Moreover, each class member's proof of reliance will be highly individualized—including each investor's knowledge of and experience in the market; an accounting of the information, advice, or rumors each investor received; and testimony as to each member's actual state of mind at the time he or she covered and why that differed from his or her state of mind at the time he or she sold short.

Based on the reasons stated above, I find that individualized questions of fact would predominate over common issues at trial and that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy. Plaintiff's motion for class certification must be denied.