### In re CHLORINE AND CAUSTIC SODA ANTITRUST LITIGATION.

**Civ. A. No. 86–5428.**

United States District Court, E.D. Pennsylvania.

Aug. 10, 1987.

Harold E. Kohn, Steven A. Asher, Robert J. LaRocca, Ralph David Samuel, Philadelphia, Pa., for plaintiffs.

Gerald W. Palmer, Richard I. Werder, Jr., Cleveland, Ohio, G. Wayne Renneisen, Philadelphia, Pa., for B.F. Goodrich Co.

Edward W. Mullinix, Philadelphia, Pa., Bartlett H. McGuire, New York City, for C.I.L. Corp. of America.

Barbara W. Mather, Thomas E. Zemaitis, Philadelphia, Pa., for Diamond Shamrock Chemical Co.

Patrick T. Ryan, Alfred W. Putnam, Jr., Philadelphia, Pa., for The Dow Chemical Co.

H. Francis DeLone, Richard C. Rizzo, Philadelphia, Pa., James W. Rankin, Daniel P. Harris, Chicago, Ill., for FMC Corp.

Daniel Segal, Philadelphia, Pa., for Georgia-Pacific Corp.

Daniel Segal, Philadelphia, Pa., for Georgia Gulf Corp.

Edward W. Mullinix, Philadelphia, Pa., Bartlett H. McGuire, New York City, for Imperial Chemical Industries, PLC.

Richard P. McElroy, Philadelphia, Pa., Elliot S. Kaplan, Deborah J. Palmer, Minneapolis, Minn., for Kaiser Aluminum & Chemical Corp.

Bruce W. Kaufman, David H. Pittinsky, Carl W. Hittinger, Donna M. Albani, Richard J. Bortnick, Philadelphia, Pa., for Occidental Chemical Corp.

Henry S. Ruth, Jr., Philadelphia, Pa., Stephen M. Axinn, Shepard Goldfein, New York City, Michael E. Campbell, W.A. Sparks, Stamford, Conn., for Olin Corp.

Robert C. Heim, Mary McLaughlin, Philadelphia, Pa., for Pennwalt Corp.

David J. Armstrong, Daniel P. Stefko, Dorothy A. Davis, Pittsburgh, Pa., for PPG Industries, Inc.

Patrick W. Kittredge, Philadelphia, Pa., John H. Schafer, S. William Livingston, Jr., Washington, D.C., for Stauffer Chemical Co.

James J. Garrett, Michael F. Ram, San Francisco, Cal., Jerome J. Shestack, Philadelphia, Pa., for Vulcan Materials Co.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is plaintiffs' joint motion for class certification. For the reasons stated herein the motion will be granted.

## I. FACTS

Plaintiffs allege defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, by conspiring from 1970 to 1986 to fix, raise, maintain and stabilize prices of chlorine and caustic soda (often referred to collectively as "chlor-alkali" products) throughout the United States. Plaintiffs are: (1) the City of Philadelphia; (2) Bullen Chemical Company, Midwest, Inc.,; (3) Jerry Grant Chemical Associates, Inc.; (4) N. Jonas & Company, Inc.; and (5) Certified Chemicals, Inc. Since each of the first four plaintiffs listed above had commenced a separate action against the same group of defendants, the court consolidated those actions (Civil Action Nos. 86–5428; 86–5967; 86–6414; and 86–6679) in Pretrial Order No. 1, filed December 9, 1986. That Order established Civil Action No. 86–5428 as the Master File for the consolidated pretrial proceedings in these consolidated actions. On December 9, 1986, plaintiffs filed one consolidated amended class action complaint which, pursuant to a court-approved stipulation filed December 16, 1986, superseded all other previously filed complaints. The consolidated amended class action complaint added the fifth plaintiff, Certified Chemicals, Inc., to this action.

Plaintiffs and members of the class they seek to represent are direct purchasers of chlorine or caustic soda. The proposed class consists of:

> All purchasers in the United States of chlorine or caustic soda directly from defendants or defendants' subsidiaries or affiliates at any time during the period from at least January 1, 1970 through September 30, 1986, excluding defendants, their subsidiaries and affiliates, and other producers of chlorine or caustic soda.

Defendants are the major producers of chlorine and caustic soda in the United States. The fifteen defendants named in the plaintiffs' complaints are: (1) The B.F. Goodrich Company; (2) C.I.L. Corporation of America; (3) Diamond Shamrock Chemical Company; (4) The Dow Chemical Company; (5) FMC Corporation; (6) Georgia Gulf Corp.; (7) Georgia-Pacific Corporation ("Georgia-Pacific"); (8) Imperial Chemical Industries, PLC; (9) Kaiser Aluminum & Chemical Corporation; (10) Occidental Chemical Corporation; (11) Olin Corporation; (12) Pennwalt Corporation; (13) PPG

Industries, Inc.; (14) Stauffer Chemical Company; and (15) Vulcan Materials Company. One of the fifteen defendants, Georgia-Pacific, has settled.

Plaintiffs claim that they and the members of the class have been injured and financially damaged in their respective businesses and property since they had to pay more for the chlor-alkali products they purchased than they would have paid under conditions of free and open competition. Plaintiffs seek treble damages, costs of suit, including reasonable attorneys' fees, and injunctive relief against defendants in order to prevent and restrain defendants' further and continued violations of Sections 1 and 2 of the Sherman Act.

Chlorine and caustic soda are each both end-products by themselves and components in the production of more complex chemical compounds. As such they are both referred to as industrial workhorse chemicals.

Chlorine is one of the chemical elements. The major method for producing chlorine is through the electrolysis of a salt (sodium chloride) brine solution. That means electricity is passed through salt brine to produce chlorine. The electricity causes the water and salt which comprise the brine to dissociate, and result in the production of chlorine, caustic soda and hydrogen. The electrolysis results in the decomposition of the salt and the production of chlorine gas and a solution of caustic soda in a fixed proportion of one (1) ton of chlorine to one point one (1.1) tons of caustic soda. Chlorine is used, *inter alia*, in water treatment and purification, bleaching, pulp and paper, general germicides and deodorants and in the manufacture of inorganic chlorides. Chlorine is the basic material of various other industrial products including: antifreeze, brake fluids, carbon tetrachloride, dry cleaning fluids, polyester fabrics, polyurethanes and synthetic rubber.

The manufacturing and marketing of vinyl chloride monomer ("VCM") and polyvinyl chloride ("PVC") constitutes a major portion of the chlorine and caustic soda industry. Chlorine gas is a key ingredient in the manufacture of ethylene dichloride which is then converted into VCM, and which in turn is converted into PVC, the basic material for the manufacture of plastics. The major chlorine and caustic soda producers are also the primary manufacturers of VCM and PVC.

Caustic soda (sodium hydroxide) is co-produced with chlorine in the electrolysis of salt. Among other uses, caustic soda is used in the manufacture of aluminum, soaps, detergents, dyes, paper pulp, textiles (*i.e.*, viscose rayon), water softening compounds, chemical intermediates and in many other industries and processes.

Defendants oppose the motion for class certification and argue that plaintiffs have not met their burden of establishing that common issues predominate. Defendants contend that plaintiffs' allegations of a conspiracy with class-wide impact is not enough to meet the predominance requirement. Defendants assert that plaintiffs must present to the court the existence of a common methodology or pattern in defendants' pricing. Defendants claim, based upon numerous charts which indicate the invoice prices in recent years of some defendants, that no consistent or common pricing methodology or pattern exists in the chlor-alkali business. Instead, defendants maintain that actual prices paid by putative class members at any point in time are spread across a vast range, exhibiting no discernible patterns. Defendants also argue that the affidavits of some ten purchasers of chlor-alkali products, who are potential class members, support defendants' contention that a tremendous diversity pervades all aspects of the industry. Consequently, defendants argue that this case should not be allowed to proceed as a class action because plaintiffs have failed to demonstrate how they might attempt to try the case on the basis of common class-wide proof and in a manageable way. The court disagrees.

## II. DISCUSSION

Class actions are a "particularly appropriate and desirable" way to resolve securi-

ties law claims and in a doubtful case courts should err in favor of allowing the class. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Courts may approve class actions only after a "rigorous analysis" ensuring compliance with Fed.R.Civ.P. 23. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Glick v. E.F. Hutton & Co., Inc.,* 106 F.R.D. 446, 447 (E.D.Pa.1985).

When seeking class certification, plaintiff bears the burden of proving that the action satisfies all four threshold requirements set forth in Fed.R.Civ.P. 23(a) and also falls within one of the three categories of Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

Rule 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

A plaintiff relying on Rule 23(b)(3) must also meet two additional criteria: (1) questions of law or fact common to class members must predominate over any questions affecting individual members; and (2) the class action device must be superior to any other method of adjudiciation. Fed.R. Civ.P. 23(b)(3).

### A. *Numerosity (Rule 23(a)(1))*

▇ Rule 23(a)(1) permits class action treatment only when "the class is so numerous that joinder of all class members is impracticable." Fed.R.Civ.P. 23(a)(1). No definite standard exists concerning a magic number satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members. *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.,* 105 F.R.D. 125, 131 (D.Minn. 1985) (*citing* F.C. Wright & A. Miller, M. Kane *Federal Practice and Procedure* § 1762, at 562 (1972)); *In re Data Access Sys. Sec. Litig.,* 103 F.R.D. 130, 137 (D.N.J. 1984). It is proper for the court "to accept common sense assumptions in order to support a finding of numerosity." *Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D.Pa.1979); *accord, Peil v. Speiser,* 97 F.R.D. 657 (E.D.Pa.1983).

Plaintiffs estimate the class size as "in the thousands." Plaintiffs' consolidated motion for class certification at 8. Defendants have not contested this estimate and in fact have indicated the class size may be hundreds or thousands. Defendants' memorandum at 6 and 89. The existence of that many class members would render joinder impracticable. It does not appear that the class size will be so large as to be unmanageable. The numerosity requirement, Rule 23(a)(1), is satisfied.

### B. *Common Questions of Law or Fact (Rule 23(a)(2))*

Courts have permissively applied the commonality requirement of Rule 23(a)(2) to a "large variety of factual circumstances including allegations of conspiracy and securities fraud." *In re Data Access Sys., supra,* 103 F.R.D. at 137 (*citing Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 367 (E.D.Pa.1980), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985)). In this case plaintiffs allege the existence of a horizontal price fixing conspiracy by defendants.

Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy.

*In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322, 335 (E.D.Pa.1976). Defendants do not contest the existence of common

questions of law or fact.[1] Here, the commonality requirement is satisfied since common questions *exist* with respect to each member of the putative class. Some common questions include: (1) whether defendants conspired to raise, fix, maintain and stabilize at artificial and noncompetitive levels the prices, terms and conditions of sale of the chlor-alkali products they sold; and, (2) whether the prices paid by plaintiffs and the proposed class members were higher than they would have been absent the alleged conspiracy.

### C. *Typicality (Rule 23(a)(3))*

The claims of the representative parties must be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). The "typicality" requirement is a safeguard against interclass conflicts, insuring that the named plaintiff's interests are more or less coextensive with those of the class. *Sley v. Jamaica Water and Utilities, Inc.*, 77 F.R.D. 391, 394 (E.D.Pa.1977). In this respect the typicality requirement overlaps with the Rule 23(a)(4) requirement since it ensures that absent class members will be adequately represented.

■ The typicality requirement is met if the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Zeffiro v. First Penn. Banking & Trust Co.*, 96 F.R.D. 567 (E.D.Pa.1983). As this court stated:

> The heart of this requirement is that plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical.

1. Defendants do, however, contest plaintiffs' claim that such questions predominate over individual questions. *See Discussion* section E(1),

*Id.* at 569–570. *See also*, H. Newberg, *Newberg on Class Actions*, § 1115(b) (1985).

The United States Court of Appeals for the Third Circuit has observed that "typical" does not mean "identical," thus the focus of the typicality requirement entails an inquiry as to whether the plaintiff's individual circumstances are markedly different or whether the legal theory upon which the claims are based differs from that upon which the claims of the other class members will be based. *Eisenberg, supra,* 766 F.2d at 786; *Weiss, supra,* 745 F.2d at 809 n. 36.

Plaintiffs claim that defendants control approximately 85% of the domestic chlor-alkali production capacity. Plaintiffs maintain that the industry is nationwide and the products are homogeneous and standardized. The complaint alleges that each of the plaintiffs has purchased one or more chlor-alkali product(s) directly from defendants during the conspiratorial period. Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

### D. *Adequacy of Representation (Rule 23(a)(4))*

In considering plaintiffs' adequacy as a class representative the Third Circuit has held that this requirement entails: (1) the qualification and competence of plaintiffs' attorney; and (2) whether plaintiffs' interests are antagonistic to those of the class. *Weiss, supra,* 745 F.2d 811; *see, e.g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449

*infra,* for the court's resolution of the predominance requirement question. .

(3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Defendants do not question the quality and experience of plaintiffs' counsel. Instead, they contend that the atypicality of plaintiffs' claim makes their interests antagonistic to those of the proposed class. The court's resolution of the typicality question, *see Discussion* section C, *supra,* also resolves this issue.

Defendants also assert that plaintiffs rely completely on their counsel and that each plaintiff has conceded that it knows no facts, other than what has been told by its counsel, to support the allegations in the consolidated complaint. Defendants' memorandum at 100. The court does not accept this assertion.

The court finds plaintiffs have satisfied the adequacy of representative requirement.

### E. *Predominance and Superiority (Rule 23(b)(3))*

#### 1. *Predominance*

Plaintiffs' claim also meets the Rule 23(b)(3) predominance requirement. The only pertinent individual question involves the issue of damages. Its importance fails to outweigh the common question of whether defendants engaged in a conspiracy to fix, maintain and stabilize the prices of chlor-alkali products.

In determining whether common questions predominate, the court's inquiry is directed primarily toward the issue of liability. *Bogosian, supra,* 561 F.2d at 456. The common questions and their predominance over individual claims are manifested in the fact that if plaintiffs and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of defendants in order to prove liability.

#### 2. *Superiority of Class Action Method*

In this case the class action device is superior to other methods of adjudication. Joinder of all of the class members would be impracticable and duplicative individual trials would impose similar burdens on the litigants and the courts. The utility and necessity of presenting the claims asserted in this action through the class action method is substantial since "a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968).

### III. CONCLUSION

Accordingly, the court will grant plaintiffs' joint motion to certify a class action and to designate the five named plaintiffs as the representatives of the class.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 10th day of August, 1987, in accordance with the accompanying Memorandum, after thorough consideration of plaintiffs' joint motion for class certification and defendants' answer thereto, and upon review of the memoranda in support and in opposition, IT IS ORDERED as follows:

1. Plaintiffs' motion for class certification is hereby *granted;*

2. Plaintiffs are hereby *certified* to sue as the representative parties on behalf of all purchasers in the United States of chlorine or caustic soda directly from defendants or defendants' subsidiaries or affiliates at any time during the period from at least January 1, 1970 through September 30, 1986, excluding defendants, their subsidiaries and affiliates, and other producers of chlorine or caustic soda;

3. The law firm of Kohn, Savett, Klein & Graf, P.C. is hereby *designated* as counsel for the class; and

4. The plaintiff class representatives shall give the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts, pursuant to Fed.R. Civ.P. 23(c)(2).