**CUMBERLAND FARMS, INC., et al.**

**v.**

**BROWNING–FERRIS INDUSTRIES, INC., et al.**

**Civ. A. No. 87–3717.**

United States District Court,
E.D. Pennsylvania.

July 21, 1988.

Dianne M. Nast, Harold E. Kohn, Philadelphia, Pa., for plaintiffs.

Patrick T. Ryan, Philadelphia, Pa., for Browning–Ferris Industries, Inc.

Roberta D. Liebenberg, Burt M. Rublin, Philadelphia, Pa., for Waste Management, Inc., Waste Management of North America, Inc., and Waste Management Partners, Inc.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is plaintiffs' consolidated motion for class action certification pursuant to Fed.R.Civ.P. 23. For the reasons stated herein, plaintiffs' motion will be granted.

## I. BACKGROUND

### A. *Procedural History*

These consolidated actions are six civil actions seeking treble damages for alleged antitrust violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs allege that defendants and their respective wholly-owned subsidiaries and affiliates, and alleged co-conspirators violated Section 1 of the Sherman Act by conspiring from January 1, 1978 to June 30, 1987, to artificially raise, fix, maintain and stabilize prices for containerized solid waste removal and disposal services (solid waste collection services) in the United States. There are seven plaintiffs: (1) Cumberland Farms, Inc., an operator of convenience stores throughout the United States; (2) Kirschner Brothers Oil Co., Inc., a marketer of petroleum products; (3) Dan Rosenberg, d/b/a Animal Hospital of Chester County, an individual who operates an animal hospital; (4) George Gusses, an individual who operates a business; (5) The Perry Corporation; (6) Uncle Donald's, Inc., d/b/a Huey's; and (7) Overton Pub, Inc., d/b/a East End Grill. Since five of these seven plaintiffs commenced a separate action against the same group of defendants on the same grounds and the other two of these seven plaintiffs together commenced one separate action against that same group of defendants on those same grounds, the court, pursuant to Fed.R.Civ.P. 42(a), consolidated all six actions (Civil Action Nos. 87–3717 (Cumberland Farms, Inc.); 87–3766 (Kirschner Brothers Oil Co., Inc.); 87–3916 (Dan Rosenberg); 87–3964 (George Gusses); 87–4148 (The Perry Corporation); and 87–6306 (Uncle Donald's, Inc. and Overton Pub, Inc.)) in Pretrial Order No. 1, filed October 7, 1987. On October 9, 1987, pursuant to Pretrial Order No. 1, plaintiffs filed one consolidated amended class action complaint under "Master File No. 87–3717," which supersedes all other previously filed complaints.

Plaintiffs allege that they and members of the class they seek to represent have directly purchased, in the course of their business, containerized solid waste removal and disposal services from one or more of the defendants, their wholly-owned subsidiaries, affiliates, and alleged co-conspirators. The proposed class consists of:

All purchasers in the United States of containerized solid waste removal and disposal services directly from defendants, or their respective wholly-owned subsidiaries, partnerships, joint ventures, or affiliates, at any time during the period January 1, 1978 to and including June 30, 1987 (excluding from the class defendants, their respective wholly-owned subsidiaries, partnerships, joint ventures, and affiliates, and co-conspirators, and other providers of containerized solid waste removal and disposal services and excluding governmental entities).

Defendants, together with their hundreds of wholly-owned subsidiaries and affiliates, are the major sellers/providers of containerized solid waste removal and disposal services in the United States. The four defendants named in the plaintiffs' complaints are: (1) Browning–Ferris Industries, Inc.; (2) Waste Management, Inc.; (3) Waste Management of North America, Inc.; and (4) Waste Management Partners, Inc.

Plaintiffs claim that they and the members of the class they seek to represent have been injured and financially damaged in their respective businesses and property since they had to pay more for containerized solid waste removal and disposal services they purchased than they would have paid under conditions of free and open competition. Plaintiffs seek treble damages, costs of these actions, including reasonable attorneys' fees, and injunctive relief against defendants, their subsidiaries, affiliates, successors, transferrees, assignees and the respective officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, in order to prevent and restrain their further and continued violations of Section 1 of the Sherman Act.

## B. The Industry

"Containerized solid waste removal and disposal services" means the collection, transportation, processing, recovery, storage or disposal of containerized garbage, refuse, trash or other solid waste, and all things incidental thereto through the use of containerized equipment. "Containerized equipment" consists of dumpster and roll-off containers of various sizes.

Most commercial solid waste is deposited by the customer in containers which generally range in capacity from two (2) to ten (10) cubic yards. Containers are mechanically lifted by the truck and their contents are emptied into the truck's compactor body. The lifting mechanism is typically in the front of the truck (front-end loader), but may also be on the side or rear of the truck (side-loader or rear-loader). The container is stationed at the customer's place of business and remains there after it has been emptied into the truck. When the truck is full, it is driven to a landfill or other disposal site or collection point (such as a transfer station, incinerator or recycling plant) where it is unloaded. Trucks usually follow a pre-determined route from one customer location to another, picking up containers on a regularly scheduled basis, e.g., once or twice a week.

"Roll-off" containers generally range in volume from fifteen (15) cubic yards to fifty (50) cubic yards. Roll-off containers are typically used for construction debris (such as bricks, metal, rocks, and wood), and in shopping malls, industrial complexes and large buildings (such as high-rise offices or hospitals). The containers are hydraulically or mechanically pulled up on to rails mounted on the truck, carried to a landfill or other disposal site where they are unloaded, and returned empty to the customer's location.

Pickups of roll-off containers for construction jobs are generally not scheduled in advance; instead, the customer calls the waste collection company when a pick-up is needed. Because construction sites (or other roll-off customers) are frequently scattered within an area and service is often

on-call, there are usually no regularly established roll-off routes.

Defendants oppose the motion for class certification and argue that plaintiffs have not met their burden of establishing that common issues of law and fact predominate. Defendants maintain that unlike cases that are suitable for class action treatment, this case involves: (1) the sale of a nonhomogenous service rather than a fungible commodity; (2) a finely fragmented localized market rather than a nationwide market; and, (3) an industry wherein decision-making is decentralized. Defendants argue that they are just two (2) of 10,000 companies in the waste collection industry and as such they do not control or dominate that industry. "Defendants' further memorandum in opposition to plaintiffs' consolidated motion for class action certification" at 20.

## II. DISCUSSION

■ Class action treatment of related claims is particularly appropriate and desirable, when, as here, plaintiffs seek redress for alleged violations of the antitrust laws. It is well recognized that private enforcement of these laws is a necessary supplement to government action. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139, 88 S.Ct. 1981, 1984–85, 20 L.Ed.2d 982 (1968); *Lawlor v. National Screen Services Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Bruce's Juices, Inc. v. American Co.*, 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947); *In re Chlorine and Caustic Soda Antitrust Litig.*, 116 F.R.D. 622, 624–25 (E.D.Pa.1987); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 155 (E.D.Pa.1979). With that in mind, in an alleged horizontal price-fixing conspiracy case when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed. 2d 290 (1985); *In re Chlorine & Caustic Soda, supra.* Courts may approve class actions only after a "rigorous analysis"

ensuring compliance with Fed.R.Civ.P. 23. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Glick v. E.F. Hutton & Co., Inc.*, 106 F.R.D. 446, 447 (E.D.Pa.1985).

When seeking class certification, plaintiff bears the burden of proving that the action satisfies all four threshold requirements set forth in Fed.R.Civ.P. 23(a) and also falls within one of the three categories of Rule 23(b). *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 163, 94 S.Ct. 2140, 2145–46, 40 L.Ed.2d 732 (1974); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

Rule 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

A plaintiff relying on Rule 23(b)(3) must also meet two additional criteria: (1) questions of law or fact common to class members must predominate over any questions affecting individual members; and (2) the class action device must be superior to any other method of adjudication. Fed.R.Civ.P. 23(b)(3).

### A. *Numerosity (Rule 23(a)(1))*

■ Rule 23(a)(1) permits class action treatment only when "the class is so numerous that joinder of all class members is impracticable." Fed.R.Civ.P. 23(a)(1). No definite standard exists concerning a magic number satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members. *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 131 (D.Minn. 1985) (*citing* F.C. Wright & A. Miller, *Fed-*

*eral Practice and Procedure* § 1762, at 562 (1972)); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 137 (D.N.J.1984). It is proper for the court "to accept common sense assumptions in order to support a finding of numerosity." *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D.Pa. 1979); *accord, Peil v. Speiser*, 97 F.R.D. 657 (E.D.Pa.1983).

Since plaintiffs' estimate as to the class size is that "it numbers in the thousands," plaintiffs conclude that "the proposed class manifestly satisfies the Rule 23(a)(1) test that the class is so numerous that 'joinder of all members is impracticable.'" Plaintiffs' memorandum in support of plaintiffs' consolidated motion for class action certification at 8. Defendants do not contest plaintiffs' satisfaction of the numerosity requirement. In fact, defendants contend that "[t]he potential class members number in the hundreds of thousands." Defendants' memorandum in opposition to plaintiffs' consolidated motion for class action certification at 51. The existence of that many class members would render joinder impracticable. At this time the court cannot find that the class size will be so large as to be unmanageable. Accordingly, the numerosity requirement, Fed.R.Civ.P. 23(a)(1), is satisfied.

### B. *Common Questions of Law or Fact (Rule 23(a)(2))*

■ Courts have permissively applied the commonality requirement of Rule 23(a)(2) to a "large variety of factual circumstances including allegations of conspiracy and securities fraud." *In re Data Access Sys., supra,* 103 F.R.D. at 137 (*citing Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 367 (E.D.Pa.1980), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985)). In this case plaintiffs allege the existence of a horizontal price-fixing conspiracy by defendants.

Antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the exist-

ence, scope and effect of the alleged conspiracy.

*In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 335 (E.D.Pa.1976). Defendants do not contest the existence of common questions of law or fact.[1] Here, the commonality requirement is satisfied since common questions *exist* with respect to each member of the putative class. Some such common questions include: (1) whether defendants and their respective wholly-owned subsidiaries conspired to raise, fix, maintain and stabilize at artificial and non-competitive levels the prices, terms and conditions of sale of their solid waste collection services; and (2) whether the prices paid by plaintiffs and the proposed class members were higher than they would have been absent the alleged conspiracy.

### C. *Typicality (Rule 23(a)(3))*

■ The claims of the representative parties must be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). The "typicality" requirement is a safeguard against interclass conflicts, insuring that the named plaintiff's interests are more or less coextensive with those of the class. *Sley v. Jamaica Water and Utilities, Inc.*, 77 F.R. D. 391, 394 (E.D.Pa.1977). In this respect the typicality requirement overlaps with the Rule 23(a)(4) requirement since it ensures that absent class members will be adequately represented.

■ The typicality requirement is met if the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Zeffiro v. First Penn. Banking & Trust Co.*, 96 F.R.D. 567 (E.D.Pa.1983). As this court stated:

The heart of this requirement is that plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability

---

**1.** Defendants do, however, contest plaintiffs' claim that such questions predominate over individual questions. *See Discussion* section E(1), *infra,* for the court's resolution of the predominance requirement issue.

of certain defenses against a class representative may not render his or her claims atypical.

*Id.* at 569–70. *See also,* H. Newberg, *Newberg on Class Actions,* § 1115(b) (1985).

The United States Court of Appeals for the Third Circuit has observed that "typical" does not mean "identical," thus the focus of the typicality requirement entails an inquiry as to whether the plaintiff's individual circumstances are markedly different or whether the legal theory upon which the claims are based differs from that upon which the claims of the other class members will be based. *Eisenberg, supra,* 766 F.2d at 786; *Weiss, supra,* 745 F.2d at 809, n. 36.

Plaintiffs claim that defendants, together with their hundreds of wholly-owned subsidiaries and affiliates, are industry leaders and the major providers of containerized solid waste removal and disposal services in the United States with aggregate 1986 revenues of over $3,000,000,000.00. Plaintiffs maintain that the solid waste hauling industry operates on a national basis and the services are generally standardized and not significantly varied or diverse. Defendants strenuously contest that assertion and maintain that they sell a mix of varied and diverse services in hundreds of separate and distinct local markets, rather than in a single, nationwide market. The consolidated amended class action complaint alleges that each of the plaintiffs has purchased containerized solid waste removal and disposal services from one or more of the defendants, their wholly-owned subsidiaries and affiliates during the alleged conspiratorial period. Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' alleged conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

### D. *Adequacy of Representation (Rule 23(a)(4))*

In considering plaintiffs' adequacy as a class representative the Third Circuit has held that this requirement entails: (1) the qualification and competence of plaintiffs' attorney; and (2) whether plaintiffs' interests are antagonistic to those of the class. *Weiss, supra,* 745 F.2d at 811; *see, e.g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Defendants do not question the quality and experience of plaintiffs' counsel. Instead, they contend that the atypicality of plaintiffs' claim makes their interests antagonistic to those of the proposed class. The court's resolution of the typicality question, *see Discussion* section C, *supra,* also resolves this issue.

The court finds that the adequacy of representation requirement, Fed.R.Civ.P. 23(a)(4), is satisfied.

### E. *Predominance and Superiority (Rule 23(b)(3))*

#### 1. *Predominance*

Plaintiffs' claim also meets the Rule 23(b)(3) predominance requirement. The only pertinent individual question involves the issue of damages. Its importance fails to outweigh the common question of whether defendants engaged in a conspiracy to fix, maintain and stabilize the prices of solid waste collection services.

In determining whether common questions predominate, the court's inquiry is directed primarily toward the issue of liability. *Bogosian, supra,* 561 F.2d at 456. The common questions and their predominance over individual claims are manifested in the fact that if plaintiffs and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of defendants in order to prove liability.

#### 2. *Superiority of Class Action Method*

In this case the class action device is superior to other methods of adjudication. Joinder of all of the class members would

be impracticable, and duplicative individual trials would impose similar burdens on the litigants and the courts. The utility and necessity of presenting the claims asserted in this action through the class action method is substantial since "a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968).

## III. CONCLUSION

Accordingly, the court will grant plaintiffs' consolidated motion to certify a class action and to designate the seven named plaintiffs as the representatives of the class.

An appropriate Order will be entered.

## ORDER

AND NOW, TO WIT, this 21st day of July, 1988, in accordance with the accompanying Memorandum, after thorough consideration of plaintiffs' consolidated motion for class action certification and defendants' answer thereto, and upon review of the memoranda in support and in opposition, IT IS ORDERED as follows:

1. Plaintiffs' motion for class certification is hereby *granted;*

2. Plaintiffs are hereby *certified* to sue as the representative parties on behalf of all purchasers in the United States of containerized solid waste removal and disposal services directly from defendants, or their respective wholly-owned subsidiaries, partnerships, joint ventures, or affiliates, at any time during the period January 1, 1978 to and including June 30, 1987 (excluding from the class defendants, their respective wholly-owned subsidiaries, partnerships, joint ventures, and affiliates, and co-conspirators, and other providers of containerized solid waste removal and disposal services and excluding governmental entities);

3. The law firm of Kohn, Savett, Klein & Graf, P.C. is hereby *designated* as counsel for the class; and

4. The plaintiff class representatives shall give the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts, pursuant to Fed.R.Civ. P. 23(c)(2).