**Doug SCHREIBER, Lazaro Collazo, Robin Dreizler and Frank Cruz, Individually and on Behalf of all other similarly situated, Plaintiffs,**

v.

**The NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.**

No. 94–2053–KHV.

United States District Court, D. Kansas.

May 29, 1996.

Lori R. Schultz, W. Dennis Cross, Morrison & Hecker L.L.P., Kansas City, MO, Robert G. Wilson, Cotkin & Collins, Los Angeles, CA, Gerald I. Roth, Allentown, PA, for plaintiffs.

Linda J. Salfrank, John J. Kitchin, Swanson, Midgley, Gangwere, Kitchin & McLarney, L.L.C., Kansas City, MO, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Kitchin & McLarney, L.L.C., Overland Park, KS, Alan I. Rothenberg, William J. Meeske, Latham & Watkins, Los Angeles, CA, William C. Barnard, Gayle A. Reindl, Sommer & Barnard, P.C., Indianapolis, IN, for defendant.

1. With the parties' agreement, plaintiff Frank Cruz has withdrawn as a prospective class representative. The parties agree that in doing so, Mr. Cruz does not waive any rights he may have as a class member.

2. On February 6, 1995, in accordance with a stipulation by the parties, this Court entered its order that plaintiffs and the NCAA be bound by the Court's ruling on the motions for summary

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on plaintiffs' *Motion for Class Certification* (Doc. # 28), filed September 15, 1995. Plaintiffs ask the Court to certify this action as a class action under Fed.R.Civ.P. 23; certify a plaintiff class consisting of all persons who since August 1, 1992, have been employed as Division I men's baseball restricted earnings coaches; and designate the named plaintiffs as class representatives.[1] With some limitations, the Court hereby grants plaintiffs' motion as to the injunctive aspects of the case.

On April 15, 1994, at the request of the National Collegiate Athletic Association ("NCAA"), the Court decided to defer the issue of class certification pending discovery and dispositive motions on the issue of liability. Both sides subsequently filed and argued such motions and on August 2, 1995, in the companion case of *Law v. National Collegiate Athletic Association,* Case No. 94–2053, this Court entered its amended *Memorandum and Order* (Doc. # 110) sustaining plaintiffs' motion for summary judgment and finding in particular that the NCAA is liable for violating Section 1 of the Sherman Act.[2] In direct response to that order, the NCAA Administrative Committee temporarily rescinded the restricted earnings coach rule. On January 5, 1996, the Court entered a permanent injunction (Doc. # 213) in the *Law* case in favor of plaintiffs Peter Herrmann and Michael Jarvis, Jr.,[3] prohibiting the NCAA from reenacting the limitations embodied in the restricted earnings coach rule or enforcing such limitations against them. Because of various delays in discovery since the Court's summary judgment rulings, plaintiffs have still not received the information which they allegedly need from the NCAA to support their theory on dam-

judgment in *Law* and that all discovery conducted in *Law* be fully applicable to this case.

3. Herrmann and Jarvis are the two named plaintiffs in the *Law* action who were employed as Division I restricted earnings basketball coaches at the time the Court entered its permanent injunction.

ages. Consequently, the parties have not yet submitted expert reports on the issue.

*Discussion*

Plaintiffs seek to certify a class composed of:

> All persons employed during the period from August 1, 1992 to the present time as third assistant or "restricted earnings" coaches in men's varsity baseball programs within colleges and universities that are members of NCAA Division I.

NCAA Bylaws 11.02.3, 11.3.4 and 11.7.4, adopted in January 1991 and effective in August 1992, created the restricted earnings coach category. Those bylaws (collectively, the "restricted earnings coach rule") limited to $12,000 the compensation that any restricted earnings coach could receive during the academic year and limited to $4,000 the compensation that any such coach could receive for summer work from the employer institution, from any member institution's summer camp or clinic, or from any summer camp or clinic owned or operated by institutional employees.

The named plaintiffs, who represent various levels of coaching experience, either have been or currently are employed in those positions formerly known as restricted earnings coaches. All plaintiffs and all proposed class members proceed on the same legal theories and base their claims on the same restricted earnings coach rule and the same overall course of conduct by the NCAA and its members.

**I. *Price Fixing Actions and Class Treatment***

■ The Supreme Court has long recognized the importance of private actions in antitrust enforcement. *See, e.g., Reiter v. Sonotone Corp.,* 442 U.S. 330, 344, 99 S.Ct. 2326, 2333, 60 L.Ed.2d 931 (1979); *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 139, 88 S.Ct. 1981, 1984–85, 20 L.Ed.2d 982 (1968). In actions such as this, which allege that a number of people have been injured by a price fixing conspiracy, the aggregate injury typically is great, but the cost of litigation makes separate prosecution of individual claims economically

unfeasible. Such cases are thus particularly appropriate for class action treatment. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262, 266, 92 S.Ct. 885, 891, 893, 31 L.Ed.2d 184 (1972); *Greenhaw v. Lubbock Cty. Beverage Ass'n,* 721 F.2d 1019, 1024 (5th Cir.1983).

■ The decision whether to certify an action as a class action is committed to the discretion of the trial court. *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982); *Olenhouse v. Commodity Credit Corp.,* 136 F.R.D. 672, 679 (D.Kan.1991). In exercising its discretion, the district court should construe Rule 23 liberally and resolve all doubts in favor of class certification. *Id.,* citing *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

**II. *Requirements of Rule 23(a)***

Fed.R.Civ.P. 23(a) sets forth four prerequisites to class certification, all of which are satisfied in this case.

**A. Numerosity**

■ Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." The numerosity requirement calls for a practical judgment based on the particular facts of each case. *Independent School Dist. No. 89 v. Bolain Equip., Inc.,* 90 F.R.D. 245, 247 (W.D.Okla.1980); *Chmieleski v. City Prods. Corp.,* 71 F.R.D. 118, 151 (W.D.Mo.1976). Thus there is no set formula for determining whether the numerosity requirement is met. *In re Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. 609, 612–13 (D.Kan.1991).

■ The party seeking class certification need not show the exact size of the class. *Albertson's, Inc. v. Amalgamated Sugar Co.,* 62 F.R.D. 43, 52 (D.Utah 1973). One court has applied a "rough rule of thumb" that 40 class members is enough to satisfy the numerosity requirement, *Wilcox Dev. Co. v. First Interstate Bank,* 97 F.R.D. 440, 443 (D.Ore.1983), while another court found 13 members sufficient. *Dale Elec., Inc. v. R.C.L. Elecs., Inc.,* 53 F.R.D. 531, 534–36 (D.N.H.1971).

■ The NCAA has approximately 300 Division I members. The restricted earnings coach rule limits all Division I members to two assistant coaches in men's baseball, and one of them must be designated a restricted earnings coach. Substantially all of the Division I schools employed a restricted earnings coach while the rule was in effect, and that position had frequent turnover in employment.[4] Thus the total number of individuals in the proposed class probably exceeds 300.

■ In addition, the members of the proposed class are geographically dispersed throughout the United States. Because this circumstance adds to the difficulty and impracticability of joinder, such geographical dispersion is another factor weighing in favor of class certification. See, e.g., Viking Travel, Inc. v. Air France, 1982–2 Trade Cas. (CCH) ¶ 64,915, 1982 WL 1884 (E.D.N.Y. 1982); In re Home–Stake Prod. Co. Securities Litigation, 76 F.R.D. 351, 356 (N.D. Okla 1977). Given the large number and geographical dispersion of the members of the alleged class, the Court finds that the numerosity requirement is satisfied.

### B. Commonality

■ The next requirement of Rule 23(a) is that there be questions of law or fact common to the class. Each member of the proposed class bases his claim on the same set of facts and circumstances—the restricted earnings coach rule, the NCAA's adoption of that rule at its annual convention in 1991, the NCAA members' rationale for adopting the rule and the effect the members intended the rule to have. The rule became applicable to each class member at the same time, on August 1, 1992. Plaintiffs claim that the rule has affected the compensation of every restricted earnings coach in the same manner, though not in the same amount.[5]

All members of the proposed class similarly base their claims on the same legal theories and authority. In fact, the NCAA has not suggested—and the Court does not believe—that the law on which the Court relied in sustaining plaintiffs' motion for summary judgment applies with less force to the dispositive issues facing each of the proposed members of the class than it does to the named plaintiffs.

■ "Antitrust price fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." Cumberland Farms, Inc. v. Browning–Ferris Indus., Inc., 120 F.R.D. 642 (E.D.Pa.1988); see also In re Alcoholic Beverages Litigation, 95 F.R.D. 321, 324 (E.D.N.Y.1982) ("The very nature of the case—involving allegations of antitrust conspiracy among defendants—appears to insure that the commonality requirement is satisfied"); Albertson's, 62 F.R.D. at 52 ("the only issue as to liability, the [price fixing] conspiracy, is common to the whole class").

■ The fact that this Court has already resolved many of the common questions does not affect this analysis. The class certification determination should be made without considering the merits of the underlying claims; the only question is whether the requirements of Fed.R.Civ.P. 23 have been met. Anderson v. Albuquerque, 690 F.2d 796, 799 (10th Cir.1982); Aluminum Phosphide, 160 F.R.D. at 612. Indeed, even if the Court were to take the merits of the case and the Court's decision regarding liability into account in making its class certification determination, those factors would strengthen

---

**4.** There is no evidence before the Court that the total number of second assistant coaches, formerly known as restricted earnings coaches, has been reduced since the temporary rescission of the rule.

**5.** Defendant claims that the rule did not affect every restricted earnings coach in the same manner and that it did not affect some coaches at all. For example, the NCAA notes that certain coaches made less than the $16,000 salary cap both before and after the restricted earnings coach rule and that such coaches could not have been injured by the salary limitations. Plaintiffs counter that according to their economic expert, even coaches who made less than the $16,000 cap were adversely affected by working in a restrained market, and the artificial salary cap measurably depressed salaries not only at or near the cap but even at levels well beneath it. As discussed herein, the Court has not yet had the benefit of plaintiffs' expert methodology, and it cannot hazard a guess which position (if either) is meritorious.

rather than weaken plaintiffs' argument for commonality. The Court finds that plaintiffs have satisfied the commonality requirement.

C. Typicality

 The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Specifically,

> ... the "class representative must be a class member, must have no interest antagonistic·to those of the class, and must have suffered the same injury as the other class members." ... Claims may be typical without being identical.... The representative's claim may differ factually and still be typical of the class if it arises from the same events or course of conduct and shares the same legal or remedial theory.

*Edgington v. R.G. Dickinson and Co.,* 139 F.R.D. 183, 189 (D.Kan.1991) (citations omitted). *See also Olenhouse,* 136 F.R.D. at 680. As mentioned, the named plaintiffs' claims arise from the same events or course of conduct and share the same legal and remedial theories as those of the rest of the proposed class.

 Like commonality, typicality results directly from the nature of plaintiffs' claims. In *In re Chlorine and Caustic Soda Antitrust Litigation,* 116 F.R.D. 622 (E.D.Pa.1987), the court granted the plaintiffs' request to certify the class, noting that typicality was inherent in the nature of the claim asserted:

> Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other class members.

*Id.* at 626; *see also Albertson's,* 62 F.R.D. at 52. Since the named plaintiffs must prove the same major elements that the other members of the proposed class must prove, and since the NCAA has indicated no reason why their interests are antagonistic to one another, the Court finds that the typicality requirement is met.

D. Fair and Adequate Representation

 In order to show that they will fairly and adequately protect the interests of the class, the representative plaintiffs must show that (1) they are able to prosecute the action vigorously through qualified counsel and (2) there is no conflict between their interests and those of the class members. *Olenhouse,* 136 F.R.D. at 680.

 Even the NCAA cannot dispute that plaintiffs are willing and able to prosecute this case vigorously through exceedingly well-qualified counsel. Plaintiffs' counsel in fact have already obtained summary judgment and partial injunctive relief in favor of their clients in the *Law* case. In addition, the NCAA suggests no conflict between the named plaintiffs and other class members which gives the Court reason to doubt whether the named plaintiffs can adequately and fairly protect and represent the interests of all members of the proposed class.[6]

---

**6.** Defendant argues that Collazo has not demonstrated that absent the restricted earnings coach rule's salary cap, he would have been paid more than the $16,000 per year he earned. The NCAA also argues that Collazo failed to mitigate any damages he may have suffered as a result of the restricted earnings coach rule. Therefore the NCAA maintains that Collazo is not an appropriate representative for a class seeking money damages for such violation of the antitrust laws. The Court need not address those contentions because it is not certifying the damage aspects of the case at this time and because the NCAA's arguments relate to the merits of Collazo's claim rather than to class certification. Defendant also claims that plaintiff Dreizler is an inappropriate class representative because he failed to report some of his summer income for 1991, 1993 and 1994 on his tax returns. The Court declines to address defendant's arguments on this issue at this time as well.

The record does indicate that plaintiffs Schreiber and Dreizler have changed jobs since the restricted earnings coach rule took effect. Furthermore, the Court has no evidence before it that those two plaintiffs plan to reenter the market for an entry level Division I baseball coaching job. Therefore Schreiber and Dreizler cannot be suitable class representatives for the injunctive aspects of the case, and the Court declines at this time to name them as such.

Even the NCAA cannot genuinely dispute that plaintiffs meet the requirements of Rule 23(a) for class certification. Defendant thus focuses its objections to class certification on the requisites under Rule 23(b). The Court thus turns to a discussion of those requirements and plaintiffs' efforts to meet them.

### III. *Requirements of Rule 23(b)*

In addition to meeting the requirements of Rule 23(a) for class certification, plaintiffs must show compliance with Rule 23(b). Plaintiffs claim that they satisfy two of the three qualifying tests to determine whether a class action may be maintained—Rule 23(b)(2) and Rule 23(b)(3).

#### A. Rule 23(b)(2)

Rule 23(b)(2) provides that an action may be maintained as a class action if the requirements of Rule 23(a) are met and if the party opposing certification has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole. By fixing maximum compensation levels for all coaches in the restricted earnings category, the NCAA acted on grounds generally applicable to the proposed class, thereby making injunctive and declaratory relief appropriate with respect to the class as a whole. There is no question that the restricted earnings coach rule was intended to and did apply generally to the class as a whole. Indeed, that was its stated purpose. Plaintiffs seek a declaration from this Court that the rule is unlawful and an injunction preventing the NCAA from reenacting it or adopting any similar rule in the future.

Defendant argues that certification under Rule 23(b)(2) is inappropriate in this case for two reasons.

#### 1. Predominant Relation to Money Damages

■ First, defendant points out, injunctive relief cannot serve as a basis for class certification where the relief sought relates predominantly to money damages. *See, e.g., Wilcox Development Co. v. First Interstate Bank,* 97 F.R.D. 440, 445 (D.Or.1983); *Vi-*

*king Travel, Inc. v. Air France,* 1982–2 Trade Cas. (CCH) at 72,671; *Doninger v. Pacific Northwest Bell,* 564 F.2d 1304, 1314 (9th Cir.1977). Any contrary rule, defendant notes, would allow plaintiffs to circumvent the requirements of Rule 23(b) by simply requesting an injunction.

However, defendant points to no evidence that plaintiffs' claims in this litigation relate predominantly to money damages. Although plaintiffs have indeed requested money damages, they have also prayed for injunctive relief from the outset of this litigation. The Court observes no indication that plaintiffs merely appended such prayer for relief to a transcendent claim for money damages in order to circumvent the requirements of Rule 23(b)(3). Quite the contrary, plaintiffs have urged all along in this lawsuit the importance of being allowed to negotiate their employment contracts and salaries in an unrestrained market. Moreover, defendant's claim that plaintiffs have suffered little or no monetary damage as a result of the restricted earnings coach rule cuts directly against their assertion that this lawsuit is primarily about money damages. The Court therefore finds that the relief sought in this case is not predominantly related to damages, but rather, relates at least equally to an injunctive remedy.

■ The Court also recognizes that where the money damages sought are substantial and not merely incidental to the injunctive relief requested, certification of the entire action under Rule 23(b)(2) is seldom appropriate. *See, e.g., Hernandez v. United Fire Ins. Co.,* 79 F.R.D. 419, 429 (D.Ill.1978); *Driver v. Helms,* 74 F.R.D. 382, 404–05 (D.R.I.1977); *Robertson v. National Basketball Ass'n,* 389 F.Supp. 867, 900 (S.D.N.Y. 1975). Therefore the Court has determined to proceed under Rule 23(c)(4)(A) and certify a class only with respect to the injunctive and declaratory aspects of the case.

■ Rule 23(c)(4)(A) permits a class action to be brought or maintained with respect to particular issues. Indeed,

[t]he theory of Rule 23(c)(4)(A) is that the advantages and economies of adjudicating issues that are common to the entire class

on a representative basis should be secured even though other issues in the case may have to be litigated separately by each class member. Accordingly, even if only one common issue can be identified as appropriate for class action treatment, that is enough to justify the application of the provision as long as the other Rule 23 requirements have been met.

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d, § 1790, at 271 (1986). The decision to treat the injunctive and declaratory aspects of the case as a class action and to take the damages issues up separately obviates all of defendant's objections to class treatment except one.

### 2. Rescission of Restricted Earnings Coach Rule

██ Defendant asserts that class certification under Rule 23(b)(2) is inappropriate because the Administrative Committee of the NCAA has rescinded the restricted earnings coach rule. Thus, defendant argues that plaintiffs' claim for injunctive relief is attenuated because plaintiffs are not threatened with immediate and irreparable harm. This argument addresses the merits underlying plaintiffs' claim for declaratory and injunctive relief, and the merits are not before the Court on this motion for class certification. The only question the Court should consider in making its class certification determination is whether the requirements of Rule 23 have been met. *Anderson*, 690 F.2d at 799. The Court accordingly finds that this action is suitable for class treatment under Rule 23(b)(2).

### B. Rule 23(b)(3)

Rule 23(b)(3) provides that a class action is maintainable when the Court finds that the criteria of Rule 23(a) have been met, that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."

██ The NCAA argues that common questions do not predominate and that a class action would be unmanageable and thus not superior to other alternatives. Defendant notes that each plaintiff must prove the fact of injury and the amount of individual damages suffered as a result of the restricted earnings coach rule. Defendant contends that the individual issues would therefore overwhelm the common issues, overtax the Court's resources, and abuse the class action mechanism.

Plaintiffs counter that their economic expert will demonstrate through a statistical model at trial the injury and amount of damages that each plaintiff has suffered. They argue that the individual issues will not overwhelm the common questions and posit that the class action is the best way to proceed.

Having certified the class for purposes of injunctive relief under Rule 23(b)(2), the Court need not address defendant's contentions in depth at this time. Plaintiffs bear the burden of proving that this action should be maintained as a class action. Naked assurances that a manageable method for dealing with individual issues will be found and presented at trial are not sufficient to meet this burden. Plaintiffs' inability to present a fuller picture of their expert's methodology is due in large part, however, to the NCAA's failure to comply with discovery deadlines and orders imposed by this Court. The Court may well revisit the issue of class certification under Rule 23(b)(3) once discovery is complete. But at this point, the Court's concerns about manageability outweigh plaintiffs' promises. At this time, the Court cannot certify the proposed class under Rule 23(b)(3) as to the damages issues in the case.

**IT IS THEREFORE ORDERED** that plaintiffs' *Motion for Class Certification* (Doc. # 28), filed on September 15, 1995, is sustained as to plaintiffs' claim for injunctive relief and is denied in all other respects.

**IT IS FURTHER ORDERED** that this action may be maintained as a class action under Fed.R.Civ.P. 23(b)(2) as to plaintiffs' claim for injunctive relief, and a plaintiff class consisting of all persons who are currently employed or will in the future be employed by any Division I member of the

NCAA in the position of second assistant coach, formerly known as "restricted earnings coach," in the sport of men's varsity baseball is hereby certified.

**IT IS FURTHER ORDERED** that named plaintiff Lazaro Collazo is hereby designated as class representative.